IN RE the MARRIAGE OF: Daniel ABITZ, Petitioner-Respondent-Petitioner,

v.

Sharol ABITZ, Respondent-Appellant.

Supreme Court

*No. 87-1944. Argued January 4, 1990.—Decided May 10, 1990.*

(Also reported in 455 N.W.2d 609.)

For the petitioner-respondent-petitioner there were briefs by *Roger A. Glenn* and *Glenn & Hoff, S.C.*, Appleton, and oral argument by *Roger A. Glenn.*

For the respondent-appellant there was a brief by *Bruce Chudacoff* and *Chudacoff & Liebzeit,* Appleton, and oral argument by *Bruce Chudacoff.*

STEINMETZ, J.   Petitioner Daniel Abitz seeks review of an unpublished decision of the court of appeals that reversed an order entered by the circuit court for Outagamie county, Judge Harold V. Froehlich, which modified a child support order. When modifying the award, the circuit court set child support by considering the appellant's (Sharol Abitz's) one-half interest in marital property income. The circuit court then multiplied the marital property income by the relevant percentage standard taken from HSS 80, Wis. Admin. Code.

The issue central to the disposition of this case is whether the circuit court erred when it considered Sharol's marital property income in setting her support obligation. The court of appeals held that it was error for the circuit court to give any consideration to Sharol's marital property income when setting support. We agree. We disagree with the court of appeals conclusion that only Sharol's income can be considered. Because the court of appeals decision failed to discuss use of the percentage standards found at HSS 80, Wis. Admin.

Code, on revision of a child support order, we also discuss the central issue in terms of what the obligated parent's gross income is for purposes of applying the standard.

The second issue presented is whether the nonobligated spouse's income and assets can be made available toward the satisfaction of the obligated parent's child support obligation, and it has already been decided by this court. This issue concerns the impact sec. 766.55(2)(c), Stats., of the Marital Property Act has on premarital or preact obligations. Section 766.55(2)(c)1 and 2 provides:[1]

> Section 766.55 Obligation of spouse . . . (2) After the determination date all of the following apply: . . .
> (c)1.   An obligation incurred by a spouse before or during marriage that is attributable to an obligation arising before marriage or to an act or omission occurring before marriage may be satisfied only from property of that spouse that is not marital property and from that part of marital property which would have been the property of that spouse but for the marriage.
> 2.   An obligation incurred by a spouse before, on or after January 1, 1986, that is attributable to an obligation arising before January 1, 1986, or to an act or omission occurring before January 1, 1986, may be satisfied only from property of that spouse that is not

---

[1]In this case, the circuit court used sec. 766.55(2)(c)1, Stats., having to do with premarital, postact obligations rather than sec. 766.55(2)(c)2, which covers the preact obligations. Although both *In re Marriage of Poindexter,* 142 Wis. 2d 517, 419 N.W.2d 223 (1988) and *In re Marriage of Burger v. Burger,* 144 Wis. 2d 514, 424 N.W.2d 691 (1988) interpreted sec. 766.55(2)(c)2, the difference between these statutes is insignificant for purposes of our analysis.

marital property and from that part of marital property which would have been the property of that spouse but for the enactment of this chapter.

The impact of sec. 766.55(2)(c), Stats., was discussed in *In re Marriage of Poindexter,* 142 Wis. 2d 517, 419 N.W.2d 223 (1988) and *In re Marriage of Burger v. Burger,* 144 Wis. 2d 514, 424 N.W.2d 691 (1988). The impact of sec. 766.55(2)(c) on premarital or preact obligations was again reviewed in *In Interest of A.L.W.,* 153 Wis. 2d 412, 451 N.W.2d 416 (1990). In all three cases, it was held that sec. 766.55(2)(c) prohibits the use of a nonliable spouse's income to "satisfy" a premarital or preact obligation.

In the case now before us, both parties agree that this situation is governed either by sec. 766.55(2)(c)1 or 2, Stats. More importantly, neither party argues that the child support ordered violates sec. 766.55(2)(c). Both the record and orders of the circuit court reflect its realization that sec. 766.55(2)(c) had an impact on the ultimate sum of child support that could be satisfied by Sharol and therefore awarded to Daniel. Thus, the ultimate impact of sec. 766.55(2)(c) is not in dispute in this case. For purposes of clarification, however, we hold that absent an express finding of shirking or transfer with intent to defraud, the circuit court abuses its discretion when it orders child support at an amount greater than that which can be fully satisfied through sole use of income and assets of the obligated parent as defined and made available to the circuit court pursuant to the language of sec. 766.55(2)(c).

The facts are undisputed. The petitioner, Daniel Abitz, and the respondent, Sharol Abitz (now Sharol Bassett), were married on August 19, 1967. Two children were born of the marriage: Jeffrey, born October 17,

1968, and Kelly, born February 7, 1974.[2] During their marriage, Daniel worked full-time while Sharol never worked outside their home more than 20 hours a week. In 1983, Daniel initiated divorce proceedings against Sharol. The judgment of divorce was effective March 7, 1984.

In part, the judgment of divorce gave the parties joint custody of their then two minor children but placed primary physical custody with Daniel. The judgment of divorce did not require Sharol to pay any child support, apparently because Sharol was at that time financially unable to support herself. Rather, the issue of child support was left open to future court order. Both parties have subsequently remarried. In 1986, Daniel married Patricia Long, and in December, 1985, Sharol married James Bassett (Bassett).

The issues before this court arise out of a matter initially raised by Daniel in a post-divorce affidavit supporting an order to show cause for modification of judgment dated February 3, 1986. An order to show cause issued by Outagamie county Commissioner Jeffrey S. Brandt required Sharol to pay child support for their two minor children. Arguments on the issues raised in the order to show cause were heard on various occasions before Commissioner Brandt who acted for the family court commissioner's office pursuant to Outagamie county court rules. The last hearing was on August 12, 1986. In the order modifying judgment dated October 14, 1986, Commissioner Brandt made findings of fact and

---

[2]At the time of the revision hearings before Judge Froehlich, the Abitz's eldest child, Jeffrey, had reached 18 years of age, and Sharol's duty to support him had ended. However, arrearages dating back to Outagamie county court commissioner Jeffrey S. Brandt's final order were reviewed and adjusted by Judge Froehlich.

conclusions of law consistent with a finding of a substantial change in circumstance. He set and ordered sums to be paid by Sharol as child support. Daniel appealed the determination of the family court commissioner to the circuit court of Outagamie county pursuant to sec. 767.13(6), Stats. A hearing de novo was held on April 21, 1987, before Judge Harold V. Froehlich.

At the hearing, Sharol's current employer testified that she applied only for part-time work and gave no reason for wanting only part-time work. Furthermore, Sharol claimed no disability or physical limitation that would have caused her to be able to work only part-time. The employer testified that Sharol would be given more work hours if she wanted them.

Sharol also testified as to the manner in which she and Bassett handle their money. According to her, their respective incomes are put into a joint fund and all expenses are paid out of money in that fund. She further testified that "what is mine is his and his is mine, so I take what I want."

Judge Froehlich issued his first decision and order modifying judgment on June 30, 1987. In that decision, the judge made findings of fact that Sharol had a current monthly gross income of $650 and that Bassett had a current monthly gross income of $3,718. The total monthly gross income for their household was therefore found to be $4,368.

Judge Froehlich's conclusions of law found a substantial change in circumstances which allowed modification of the child support provisions in the original judgment of divorce. The judge concluded that Sharol had a legal responsibility to support her child and that she was in the position to do so. The court computed the amount of child support by adding Sharol's income to Bassett's income, dividing that sum in half and multiply-

ing the quotient by 17 percent. The 17 percent figure represents the standard figure used to determine support owed for one child pursuant to rules promulgated under HSS 80, Wis. Admin. Code.

The circuit court then arrived at and ordered the sum of $371 as the proper amount of child support due. Since this amount did not exceed Sharol's actual gross income of $650, the support obligation was found by the court to be "satisfied from that part of her marital property which would have been her property but for the marriage" pursuant to sec. 766.55(2)(c)1, Stats.

Daniel brought a motion to reconsider and/or clarify the order modifying judgment. A hearing on the motion was held before Judge Froehlich on August 14, 1987. As a result thereof, the court issued a decision and order modifying judgment dated September 29, 1987, which constituted the final ruling of the court.

The circuit court, in its final order, made the following relevant findings:

> 2. That the respondent's current monthly net income from her job exceeds $400 per month and in addition she has interest income on her property division.
> 3. I incorporate herein by reference all of the findings of fact, conclusions of law and order entered by this court on June 30, 1987, together with all decisions issued from the bench in the April 21, 1987 hearing or the August 14, 1987 hearing except those inconsistent with the new findings I make today.

The court then made the following conclusions of law:

> 1. I incorporate all conclusions of law made in . my order modifying judgment dated June 30, 1987.

2. That as an additional conclusion of law I find that I may not utilize the respondent's new husband's income to satisfy the respondent's obligation to pay child support and that is the basis of my modification of the amounts due on the arrearage. However, her income is one-half of her earnings and one-half of her husband's income under the marital property act and I have determined her support obligations on this basis.[3]

3. That I do not feel that it is appropriate to set support at the standard percentage as applied against this respondent's income as she has the ability, given her financial circumstances, to pay more and I am

---

[3]The record on motion to reconsider reflects that the following conversation took place concerning the determination of Sharol's "income:"

MR. CHUDACOFF: As I understand, what you are doing in your decision, then, in terms of the philosophy of it, you are taking half of her current husband's income plus half of her income—

THE COURT: Gross.

MR. CHUDACOFF: —and saying those are her income because of the marital property division.

THE COURT: I'm not saying that's her income. I'm saying she is entitled under the law to petition the Court and she can get that income. She can take that income away from him.

MR. CHUDACOFF: Because she has the right to take that away if she chooses to do that, you're indicating that the entitlement to support under the guidelines which is now 17 percent, would be 17 percent of the total of the two halves of gross income, and then you are saying that as long as that is an amount which is greater than her total income she pays her total income, and as long as it is less than her total income she pays that amount.

As I understand your philosophy behind that, it is that, while he cannot be required to devote any of his income, whether she can get it or not, to the support of her daughter from a prior marriage because that's a preexisting obligation, you can take as much as you want up to the total of her income from her to pay that obligation based on both the incomes.

THE COURT: That's what I am doing. You got it correct. And that's what the appellate court is going to have to decide.

170

convinced that she could work more hours if she wanted to.

The record of the hearings reflects that the trial court modified the award upon evidence that part of Sharol's $650 income included roughly $200 in principle income from her divorce settlement. The judge took 17 percent of the $200 surplus—about $34—and subtracted that amount from the original award of $371 to arrive at the $337 award ordered. Sharol appealed to the court of appeals. Both Sharol and Daniel joined in a petition to this court to bypass the court of appeals pursuant to sec. 808.05, Stats., and Rule 809.60. This court denied the petition to bypass.

In an unpublished decision the court of appeals reversed the circuit court's order modifying judgment. The court of appeals relied as controlling on our holdings in *Poindexter,* 142 Wis. 2d 517, and *Burger,* 144 Wis. 2d 514. Following the reasoning of *Poindexter* and *Burger,* the court of appeals concluded that when setting child support the circuit court erred in considering Sharol's marital property rights in her current husband's income. The court of appeals stated that only Sharol's income could be considered along with the needs of the children and the parent's ability to pay. The court of appeals stated that it was a question of fact whether Sharol's remarriage constituted a substantial change in circumstances justifying modification of child support under sec. 767.32, Stats., which must be "determined by the trial court in view of all the facts and circumstances of the parties." *Abitz v. Abitz,* No. 87-1944, unpublished slip op. at 4 (Wis. Ct. App. Nov. 22, 1988). When making its determination, the court of appeals instructed the circuit court not to consider the new spouse's income to satisfy the premarital child support obligation.

171

Daniel petitioned this court for review pursuant to secs. 808.10 and Rule 809.62, Stats. We granted the petition.

It is necessary to first harmonize sec. 766.55(2)(c), Stats., with sec. 767.32(1), which governs revisions of child support upon divorce. We have already discussed the impact sec. 766.55(2)(c) has on the ultimate order of a child support award. However, a reading of the court of appeals decision leads to the conclusion that the court of appeals determined that sec. 766.55(2)(c) also restricts that income which can be considered by the circuit court as it attempts to set a child support award.[4] We disagree and conclude that this analysis fails to harmonize the statutes. We hold that the statutes are best harmonized and remain individually viable through the distinction between income which can be considered by a circuit court to "set" or determine one's ability to pay a child support order and income that is available to "satisfy" a child support obligation.

In a somewhat analogous situation, we discussed the difference between income that can be considered when determining one's ability to pay (setting the obligation) and income available to satisfy an obligation. In *A.L.W.*, we reviewed the legislative intent behind the use of the ambiguous word "satisfy" in sec. 766.55(2)(c), Stats. We then stated that, "[o]n the basis of this history, we therefore conclude that the legislative prohibition against using a non-liable spouse's income to 'satisfy' a pre-marital or pre-Act obligation in sec. 766.55(2)(c) consistent

---

[4]As stated, the court of appeals decision relied on *Poindexter* and *Burger* as controlling the determination of this case. However, *Poindexter* and *Burger* interpreted sec. 766.55(2)(c), Stats., to conclude that a nonobligated spouse's income was not available to "satisfy" maintenance or child support obligations.

with prior legislative enactments, was not intended to prohibit consideration of the non-liable spouse's income in determining the liable spouse's ability to pay under Chapter 46 of the Wisconsin Statutes." *A.L.W.*, 153 Wis. 2d at 426.

█

We conclude that the distinction between income that can be considered by the circuit court when setting as opposed to satisfying a premarital or preact obligation as discussed in *A.L.W.* is equally valid in the analysis made on revision of an obligation of child support under sec. 767.32(1), Stats.

Section 767.32(1), Stats., provides in relevant part:

> **(1)** After a judgment providing for child support under s. 767.25 . . . the court may, from time to time, on the petition, motion or order to show cause of either of the parties . . . revise and alter such judgment respecting the amount of such maintenance or child support and the payment thereof, . . . and may make any judgment respecting any of the matters which such court might have made in the original action . . . .. Any change in child support because of alleged change in circumstances shall take into consideration each parent's earning capacity and total economic circumstances.[5]

---

[5]Sharol's brief offers two threshold arguments. First, Sharol asserts that sec. 767.32(1), Stats., is inapplicable because the original judgment of divorce did not "provide for" child support. We disagree. In final judgments of divorce, provisions for child support are not final, and the circuit court may exercise its powers under the statutes to revise such provisions upon a finding of a substantial change in circumstances. *See Romanowski v. Romanowski,* 245 Wis. 199, 14 N.W.2d 23 (1944).

Sharol also argues that the findings of the circuit court do not support a conclusion that a substantial change in circumstances has occurred. We disagree. Our review of the entire record

■Modification of a child support judgment is within the sound discretion of the circuit court although modification may only be made upon a finding of a substantial or material change in circumstances of the parties or children. *Burger,* 144 Wis. 2d at 523. The court's exercise of discretion will not be overturned unless the court has abused its discretion. *Id.* at 523. The court's exercise of discretion will be affirmed where the decision of the court reflects a "reasoning process dependent on facts in, or reasonable inferences from, the record and a conclusion based on proper legal standards." *Ashraf v. Ashraf,* 134 Wis. 2d 336, 340-41, 397 N.W.2d 128 (Ct. App. 1986).

In contrast to the economic restrictions of sec. 766.55(2)(c), Stats., sec. 767.32(1) expressly mandates two economic considerations be followed by the circuit court when determining ability to pay, each party's earning capacity and total economic circumstances. Pursuant to sec. 767.255(6), Stats., a circuit court's consideration of each party's earning capacity includes review of:

> . . . educational background, training, employment skills, work experience, length of absence from the job market, custodial responsibilities for children and the time and expense necessary to acquire sufficient education or training to enable the party to become self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage.

The record reflects that Daniel's earning capacity as a full-time teacher is not in dispute. Sharol's earning capacity as a beautician is in dispute. Although the

---

supports the circuit court's conclusion. Support on record is sufficient. *See In re Marriage of Schwantes v. Schwantes,* 121 Wis. 2d 607, 631, 360 N.W.2d 69 (1984).

record reflects that Sharol had never worked outside the home more than 15 to 20 hours per week while married to Daniel and that she suffered serious health problems subsequent to their divorce, the record also reflects that she is of substantially improved health and that extra work hours would be made available to her if she requested them.

█

Consideration of a party's earning capacity can manifest itself in an express finding of shirking which justifies a child support order in arrears. *See, e.g., In re Paternity of R.L.M.,* 143 Wis. 2d 849, 422 N.W.2d 890 (Ct. App. 1988); *In re Marriage of Roellig v. Roellig,* 146 Wis. 2d 652, 431 N.W.2d 759 (Ct. App. 1988). The circuit court in this case made no express finding that Sharol was shirking her obligation of support. Rather, the court apparently considered earning capacity in tandem with Sharol's economic circumstances in order to determine her ability to pay.

Section 767.32(1), Stats., also mandates consideration of the parties' total economic circumstances when determining an obligated party's ability to pay. Sharol conceded at oral argument before this court that a review of her total economic circumstances included consideration of her second husband's income. This court made that fact clear in *Miller v. Miller,* 67 Wis. 2d 435, 227 N.W.2d 626 (1975).[6]

---

[6]Sharol asserts that the circuit court erred in part because the findings do not reflect that Sharol's total economic circumstances were directly compared to Daniel's pursuant to sec. 767.32(1), Stats. We disagree that specific findings are required. The record reflects that the circuit court had full financial disclosure from both parties and their spouses at his disposal. We find such evidence of record sufficient to show that the parties' total

The distinction between the setting of and the satisfaction of a child support award keeps a circuit court's review of total economic circumstances properly unrestricted by considerations that might otherwise be made of marital property definitions of income. A comparison of principles underlying the Marital Property Act with principles underlying child support furthers our conclusion that marital property principles of income are not applicable.

The Marital Property Act is designed to govern property ownership during the course of an on-going marriage and property division only upon the death of a spouse. The Marital Property Act was not intended to alter divorce law. *See generally* Weisburger, "The Marital Property Act Does Not Alter Divorce Law," 60 Wis. Bar. Bull. 14 (1987); Furrh, "Divorce and the Marital Property Act: The Wisconsin Cases," 15 Community Prop. J. 41 (1989). No language within the Marital Property Act expressly or impliedly preempts the factors that the circuit court must consider when determining an obligated parent's ability to pay child support pursuant to sec. 767.32(1), Stats. Likewise, no language within the Marital Property Act restricts the traditionally broad definition of income that can be considered by the circuit court upon review of total economic circumstances. More specifically, the primary concern of sec. 766.55 is to prevent premarital creditors from receiving a windfall through access to a nonobligated spouse's income or assets otherwise attributable to the obligated parent due to enactment of the Marital Property Act. *See A.L.W.,* 153 Wis. 2d at 425 and n.9.

---

economic circumstances were considered in the determination of Sharol's ability to pay.

Where sec. 766.55(2)(c), Stats., protects the nonobligated spouse from bearing the financial burden of premarital debts owed by his or her spouse, the child support statutes in ch. 767 protect the welfare of the child. Principles which underlie an obligation to support a child upon divorce follow the primary rule that both parents have the obligation to support the minor children of their marriage. "[D]ivorce terminates only the relationship of husband and wife, and does not affect in any manner the parental relations or duties of the parties." *Hutschenreuter v. Hutschenreuter,* 23 Wis. 2d 318, 321, 127 N.W.2d 47 (1964). The stated goal of child support is to provide the greatest amount of income possible in order to maintain the children at the standard of living they would have enjoyed had the family remained intact. *See Sommer v. Sommer,* 108 Wis. 2d 586, 589-90, 323 N.W.2d 144 (Ct. App. 1982). As this court stated in *Kritzik v. Kritzik,* 21 Wis. 2d 442, 448, 124 N.W.2d 581 (1963):

> [I]n his role as a family court, the trial court represents the interests of society in promoting the stability and best interests of the family. It is his task to determine what provisions and terms would best guarantee an opportunity for the children involved to grow to mature and responsible citizens, regardless of the desires of the respective parties. This power, vested in the family court, reflects a recognition that children involved in a divorce are always disadvantaged parties and that the law must take affirmative steps to protect their welfare. (Footnote omitted.)

Absent the distinction between setting and satisfying a child support obligation, it is clear that the protections afforded the nonobligated spouse would override the goals of child support by greatly restricting the

177

income sources that the circuit court could consider when determining ability to pay. Our conclusion best protects both goals.

██ Sharol's arguments, especially those made at oral argument before this court, appear to be in accord with our method of harmonizing secs. 766.55(2)(c) and 767.32(1), Stats. Sharol concedes that the $337 child support obligation ordered might well have been justified under a traditional review of sec. 767.32(1). Sharol argues, however, that the trial court erred at law when it exercised its discretion to apply the percentage standards under HSS 80, Wis. Admin. Code, to her marital property income.[7] We agree. Having already concluded that marital property principles of income do not enter into a child support analysis, it is necessary to determine to what income the percentage standards are to be applied by harmonizing use of the percentage standards under sec. 767.25(1j) with their use under sec. 767.32(1).

Although secs. 767.25 and 767.32(1), Stats., share the same principles, statutory revisions made to sec. 767.25 manifest legislative intent to restrict the circuit court's ability to exercise its discretion on the initial setting of a child support order. Relevant sections of sec. 767.25 provide:

> **(1j)** Except as provided in sub. (1m), the court shall determine child support payments by using the

---

[7]The percentage standards pursuant to HSS 80.03, Wis. Admin. Code, are:

    (a)   17 percent for one child;
    (b)   25 percent for two children;
    (c)   29 percent for three children;
    (d)   31 percent for four children; and
    (e)   34 percent for five or more children.

percentage standard established by the department of health and social services under s. 46.25(9)(a).

(1m) Upon request by a party, the court may modify the amount of child support payments determined under sub. (1j) if, after considering the following factors, the court finds by the greater weight of the credible evidence that use of the percentage standard is unfair to the child or to any of the parties:

Prior to the codification of sec. 767.25(1j) and (1m), Stats., effective July 1, 1987, application of the percentage standards promulgated into rule at HSS 80, Wis. Admin. Code, could be applied in lieu of the factors listed at the total discretion of the circuit court. *See* sec. 767.25(1m) and (1p) (1983–84). Changes made pursuant to 1985 Act 29 and first codified at sec. 767.25(1j) (1985–86) now mandate the use of the percentage standard. Under the percentage standard calculations, the needs of the child are presumed. Likewise, it is presumed that the custodial parent shares his or her income with the child. It is also presumed that the award set via use of the percentage standard calculations is fair. *See* Preface, Child Support Percentage of Income Standard, ch. HSS 80, Wis. Admin. Code. Thus, under sec. 767.25(1j), the discretion of the circuit court has been greatly circumscribed. Discretion in the initial determination of child support under sec. 767.25 can only be exercised by the circuit court upon the request of a party pursuant to sec. 767.25(1m). Upon request, the circuit court may modify the percentage calculation award only if, after considering the factors listed, "[t]he court finds by the greater weight of the credible evidence that use of the percentage standard is unfair to the child or any of the parties." Section 767.25(1m).

To date, the legislature has not manifested a similar intent to restrict the broad discretion exercised by the

circuit courts on revision of child support orders pursuant to sec. 767.32(1), Stats. Absent legislative direction, we will not act so as to mandate use of the percentage standard on revision of child support and thereby reduce the circuit court's broad discretion at this stage. To the contrary, we read sec. 767.32(1) as analogous to the request a party makes under sec. 767.25(1m) for discretionary revision of an initial award. By analogy, the movant or petitioner under sec. 767.32(1) will only be successful in his or her attempt to revise an earlier judgment awarding child support if he or she shows that the award is unfair under circumstances as they stand since the time of the original order.

However, this case presents an unresolved issue of first impression in the discretionary use of the percentage standard on revision of child support orders when the noncustodial parent has remarried.[8] The question we must resolve is what is the "gross income" of a remarried, noncustodial parent for purposes of calculating the "base" to which the relevant percentage standard is ultimately applied.

The percentage standard is applied to a "base," defined as "the monthly income at which the child support obligation is determined . . .." HSS 80.02(3), Wis. Admin. Code. The base is derived from calculations made from the paying parent's "gross income." "Gross income" is broadly defined under HSS 80.02(12) as income "derived from any source and realized in any form." The reference for the gross income definition is the federal income tax definition found at 26 C.F.R.

---

[8]We tacitly approved of discretionary use of the percentage standards at HSS 80, Wis. Admin. Code, in revision of child support orders in *Burger,* 144 Wis. 2d 514; *see also Marriage of Long v. Wasielewski,* 147 Wis. 2d 57, 432 N.W.2d 615 (Ct. App. 1988). Paying parties in both cases were single.

1.61–1.[9]

We conclude that the gross income issue is resolved, absent direction from the legislature or the Department of Health and Social Services, by harmonizing application of HSS 80 percentage standards as applied in initial determinations of child support under sec. 767.25(1j), Stats., with the discretionary application of the standard under sec. 767.32(1). In order to harmonize these statutes in this respect, this court makes one assumption. It is assumed that when the percentage standard is applied in the initial determination of child support at the final judgment of divorce pursuant to sec. 767.25(1j), the paying parent is single. Therefore, his or her gross income is derived solely from his or her individually earned income and assets.

■■■■

We hold that a circuit court that chooses to use the percentage standard in the exercise of his or her broad discretion when revising a child support obligation pursuant to sec. 767.32(1), Stats., must apply the same principles of gross income as are available to it under our assumed application pursuant to sec. 767.25(1j). Thus, in order to properly apply the percentage standard on revision when the paying parent has remarried, the circuit court must determine the paying parent's gross income

---

[9] 26 CFR 1.61–1, Gross income, provides:

   (a) *General definition.* Gross income means all income from whatever source derived, unless excluded by law. Gross income includes income realized in any form, whether in money, property, or services. Income may be realized, therefore, in the form of services, meals, accommodations, stock, or other property, as well as in cash. Section 61 lists the more common items of gross income for purposes of illustration. For purposes of further illustration, sec. 1.61–14 mentions several miscellaneous items of gross income not listed specifically in section 61. Gross income, however, is not limited to the items so enumerated.

as if he or she were still single. The circuit court would then convert that gross income into the base to which it would apply the relevant percentage standard.

In no uncertain terms does our holding, which restricts the definition of gross income for purposes of applying the percentage standards, otherwise restrict the circuit court's total discretion to contemporaneously review on its own initiative the percentage standard award as it revises a child support order pursuant to sec. 767.32(1), Stats. The circuit court retains broad discretionary powers to adjust the percentage calculation to arrive at an award it determines is fair in light of the knowledge it has before it concerning the parties' earning capacities and total economic circumstances.

Relevant to the central issue in this case, we conclude that marital property principles of income are not to be considered under statutes in ch. 767 which deal with issues of child support. We conclude that the use of the percentage standards of HSS 80, Wis. Admin. Code, on revision of a child support order pursuant to sec. 767.32(1), Stats., is purely discretionary with the circuit court. We further conclude, however, that should the circuit court choose to apply the percentage standard under circumstances in which the paying parent has remarried, then gross income shall be calculated as if that parent had remained single. We further conclude that no restraints are otherwise placed upon the circuit court's discretion on revision of a child support order to adjust a percentage calculation in light of the parties' earning capacities and total economic circumstances as we have defined them herein.

The court of appeals decision is affirmed, and the case is remanded to the circuit court for redetermination and order of child support not inconsistent with this opinion.

*By the Court.*—The decision of the court of appeals is affirmed.