¶ 30.
ANN WALSH BRADLEY, J.
(dissenting). The majority bends over backwards to reach its conclusion. Not only does its analysis undermine the purpose of the expunction statute, it also sub silencio overrules recent precedent. Ultimately, because the implications of its holding are yet unclear, it sows the seeds of confusion for circuit courts and litigants alike. And for what?
¶ 31. Since the circumstances leading to this case arose, the form in question has been modified to eliminate the potential for confusion.[1] Due to these *22 revisions, those circumstances will not again be presented. Thus, it is hard to imagine what benefit can be gained by the uncertainties and problems that inevitably will be wrought by the majority's sub silencio overruling of our clear precedent.
¶ 32. I determine that the more prudent course is to take an approach that is consistent with the purpose of the statute and our recent precedent. Under that approach, youthful offenders can be deemed to have successfully completed their sentences when they sufficiently comply with the terms of probation.
¶ 33. Accordingly, I respectfully dissent.
I
f 34. The focus of this case is Wisconsin's ex-punction statute, Wis. Stat. § 973.015. It permits the expunction of an offender's criminal record if the offender meets various criteria, including successful completion of probation:
. .. when a person is under the age of 25 at the time of the commission of an offense for which the person has *23 been found guilty in a court for violation of a law for which the maximum period of imprisonment is 6 years or less, the court may order at the time of sentencing that the record be expunged upon successful completion of the sentence if the court determines the person will benefit and society will not be harmed by this disposition.
Wis. Stat. § 973.015(lm)(a)(l).
¶ 35. " [Successful completion" is defined in Wis. Stat. § 973.015(lm)(b). It requires an offender to have "satisfied the conditions of probation":
Aperson has successfully completed the sentence if the person has not been convicted of a subsequent offense and, if on probation, the probation has not been revoked and the probationer has satisfied the conditions of probation.
¶ 36. Wis. Stat. § 973.015(lm)(b) anticipates that a certificate of discharge will issue upon successful completion of probation and that the certificate "shall have the effect of expunging the record":
Upon successful completion of the sentence the detaining or probationary authority shall issue a certificate of discharge which shall be forwarded to the court of record and which shall have the effect of expunging the record....
¶ 37. The majority reads this language in a manner that severely limits an offender's ability to utilize the statute. In doing so, it undermines the statute's purpose, overrules recent precedent sub silencio, and creates confusion. I address each in turn.
A
¶ 38. It is well established that the purpose of Wis. Stat. § 973.015 is " 'to provide a break to young *24 offenders who demonstrate the ability to comply with the law' and to 'provide!] a means by which trial courts may, in appropriate cases, shield youthful offenders from some of the harsh consequences of criminal convictions.'" State v. Matasek, 2014 WI 27, ¶ 42, 353 Wis. 2d 601, 846 N.W.2d 811 (quoting State v. Leitner, 2002 WI 77, ¶ 38, 253 Wis. 2d 449, 646 N.W.2d 341).
¶ 39. This is a laudable purpose given the extreme consequences a criminal conviction can have on an individual. As Legal Action of Wisconsin's amicus brief observes, the consequences of a criminal conviction are both wide-ranging and long lasting:
The American Bar Association (ABA) has identified over 38,000 statutes and regulations that impose collateral consequences on people convicted of crimes. Over half of these laws deny employment opportunities . .. .An offense history that once would have languished in the practical obscurity of an old court file, has now become a permanent and highly stigmatized part of an individual's public history.
Amicus Br. 2. The negative impact a criminal record can have on employment is particularly troubling as "[Research consistently shows that finding quality steady employment is one of the strongest predictors of desistance from crime." Devah Pager, Double Jeopardy: Race, Crime, and Getting a Job, 2005 Wis. L. Rev. 617, 647.[2]
*25 ¶ 40. Thus, expunction offers not only a substantial benefit to an offender and society, it also "offers young offenders a fresh start without the burden of a criminal record and a second chance at becoming law-abiding and productive members of the community." State v. Hemp, 2014 WI 129, ¶ 19, 359 Wis. 2d 320, 856 N.W.2d 811. It comes as no surprise then that the history of the expunction statute "show[s] a consistent legislative effort to expand the availability of expungement to include a broader category of youthful offenders." Id., ¶ 20.
¶ 41. With this background, Wis. Stat. § 973.015 should be liberally construed to provide expunction. See Marquez v. Mercedes-Benz United States, LLC, 2012 WI 57, ¶ 23 n.19, 341 Wis. 2d 119, 815 N.W.2d 314 (citing Hughes v. Chrysler Motors Corp., 197 Wis. 2d 973, 983, 542 N.W.2d 148 (1996)) ("remedial statutes should be liberally construed to advance the remedy the legislature intended to provide.").
f 42. Yet, the majority interprets the expunction statute in a manner that severely limits an offender's ability to utilize it. Although it correctly states that an offender must "satisfy all the conditions of probation," it seemingly adopts the State's position that the offender's perfect compliance is required in order to be entitled to expunction. Majority Op., ¶ 13. In doing so, the majority completely ignores Ozuna's argument that the word "satisfy" has been defined to mean "[t]o meet or be sufficient for (a requirement)." See Satisfy, The American Heritage Dictionary of the English Language, (5th ed. 2017).
*26 ¶ 43. The majority's approach undermines the statute's purpose and the legislature's intent to reach a broader category of youthful offenders. Probationers must adhere to such a myriad of conditions that requiring perfection effectively removes the possibility of expunction. For example, there are the standard rules of community supervision that probationers must follow.[3] These rules range from obtaining approval prior to borrowing money or making a purchase on credit, to reporting for scheduled and unscheduled appointments.
f 44. Under the majority approach, an offender would be denied expunction for missing a single unscheduled appointment due to such unavoidable circumstances as an inability to find a babysitter, getting stuck in traffic, or being unable to leave work. That result is unreasonable and completely at odds with the purpose of the expunction statute.
B
¶ 45. In addition to undermining the statute's purpose, the majority's opinion also sub silencio overturns recent precedent.
f 46. A scant three years ago, this court considered how an offender obtains expunction. Hemp, 359 Wis. 2d 320. In Hemp, the circuit court had determined at sentencing that the defendant was eligible for expunction conditioned upon successful completion of probation. Id., ¶ 5. After the defendant completed probation he received a certificate of discharge from the Department of Corrections. Id., ¶ 6. The circuit *27 court, however, denied his petition for expunction because it was "tardy". Id., ¶ 9.
¶ 47. This court examined whether Wis. Stat. § 973.015 placed any burden on the defendant to petition the circuit court for expunction within a specific timeframe and concluded that the duty rested on the detaining or probationary authority, not the defendant. Hemp, 359 Wis. 2d 320, ¶ 25. We further concluded that "once the detaining or probationary authority forwards the certificate of discharge to the court of record, expungement has been effectuated." Id., ¶ 29; see also id., ¶ 25 ("the detaining or probationary authority must forward the certificate of discharge to the court of record upon the individual defendant's successful completion of his sentence and at that point the process of expungement is self-executing."); id., ¶ 32 ("the forwarding of the certificate of discharge to the circuit court is what triggers expungement'').
¶ 48. In explaining the holding, this court specifically rejected the notion that a certificate of discharge must be approved by the circuit court prior to a grant of expunction. Id., ¶ 36. We recognized that any inference necessitating circuit court approval would be "imposfing] additional requirements that are contrary to the statute's plain language." Id. We repeatedly emphasized that the circuit court's role with respect to expunction was limited to its decision at sentencing. Id., ¶¶ 39, 40, 42. Thereafter, the determination of whether a probationer had successfully completed probation was effectively left to those in the best position to evaluate it: the probation agents.
¶ 49. The majority now reinserts the circuit court into the process of effectuating expunction. It declares that "a person's statutory entitlement to expungement *28 depends not on whether the court receives a particular notice from the DOC ..." and that "it is proper for a circuit court to deny expungement if a defendant has not met all three criteria for the 'successful completion of the sentence Majority Op., ¶ 14.
¶ 50. These declarations cannot be squared with the holdings in Hemp. A certificate of discharge cannot be the trigger for automatically effectuating expunction if the circuit court has the option to review it and make an independent determination on the matter. Under the majority's analysis, expunction is no longer automatic or self-executing as Hemp mandated. Further, no longer is it the probation agent that exclusively determines whether an offender has successfully completed probation. By reintroducing the circuit court into the expunction process after the DOC has issued its certificate of discharge, the majority unequivocally, yet sub silencio, overrules Hemp, 359 Wis. 2d 320.[4]
C
¶ 51. In overruling Hemp, the majority creates confusion for circuit courts and litigants alike.
*29 ¶ 52. It is now unclear what will happen when a certificate of discharge is issued. Will it trigger expunction — as the plain language of the statute requires? See Wis. Stat. § 973.015(lm)(b) ("a certificate of discharge which shall be forwarded to the court of record and which shall have the effect of expunging the record . . . ." (emphasis added)).
¶ 53. Or will the court opt to review it — in clear violation of the Hemp holding? See Hemp, 359 Wis. 2d 320, ¶ 32 ("the forwarding of the certificate of discharge to the circuit court is what triggers expungement"); id., ¶ 29 ("once the detaining or probationary authority forwards the certificate of discharge to the court of record, expungement has been effectuated."); id., ¶ 25 ("the detaining or probationary authority must forward the certificate of discharge to the court of record upon the individual defendant's successful completion of his sentence and at that point the process of expungement is self-executing.").
¶ 54. What criteria will the court use to decide whether to review the certificate of discharge? What procedures will a court follow if it decides to review a certificate of discharge?
¶ 55. Also left unanswered is what happens if there is a factual debate over whether the offender has satisfied the terms of probation. Must the court hold a hearing? Will the offender have a chance to appear and argue the case? What is the impact of this disarray?
¶ 56. Rather than providing guidance, the majority leaves a void. It suggests that because Ozuna is not contesting the facts, this case "is not the proper vehicle in which to set forth the procedures a court is to follow when such factual matters are disputed." Majority op., *30 ¶ 14 n.9. It further expresses its "confidence" in the circuit court's ability "to resolve such matters fairly." Id.[5]
¶ 57. The majority's confidence provides cold comfort for a youthful offender hoping to get a second chance through expunction.
¶ 58. Because the most likely result of the majority's decision is that circuit courts will adopt ad hoc procedures, an offender's chance at expunction could come down to which court receives the offender's certificate of discharge. This poses a whole host of future due process concerns. By creating an opportunity for circuit courts to review whether the terms of probation have been met, and failing to provide any guidance on how to do so, the majority creates more problems than it has solved, leaving confusion in its wake.
II
¶ 59. Contrary to the majority, I would interpret the expunction statute in a manner consistent with its remedial purpose. See State v. Leitner, 253 Wis. 2d 449, *31 470, 646 N.W.2d 341 (2002). ("A cardinal rule in interpreting statutes is that an interpretation supporting the purpose of the statute is favored over an interpretation that will defeat the manifest objective of the statute.").
¶ 60. Statutory interpretation begins with the language of the statute. State ex rel. Kalal v. Circuit Ct. for Dane Cty., 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110. Where the language is ambiguous, a court may consult extrinsic sources, such as the statute's purpose and legislative history, to discern a statute's meaning. Id., ¶ 48.
¶ 61. Here, both litigants present reasonable meanings for the words "satisfied the conditions of probation." The State contends that it means perfect compliance with the terms of probation, while Ozuna pointed to a dictionary definition of "satisfy" that reads "[t]o meet or be sufficient for (a requirement)". Satisfy, The American Heritage Dictionary of the English Language, (5th ed. 2017) (emphasis added). Thus, the statute is ambiguous. Kalal, 271 Wis. 2d 633, ¶ 47 ("a statute is ambiguous if it is capable of being understood by reasonably well-informed persons in two or more senses.").[6]
¶ 62. As discussed above, the purpose of the expunction statute is well established. It is a remedial statute meant "to provide a break to young offenders who demonstrate the ability to comply with the law," which the legislature has consistently sought to expand. Leitner, 253 Wis. 2d 449, ¶ 38; see also Hemp, 359 Wis. 2d 320, ¶ 20. Accordingly, using the defini *32 tion of "satisfy" that permits expunction when an offender has "sufficiently" complied with the terms of probation is more consistent with the purpose of the statute than using a definition that would limit ex-punction to offenders with have "perfect" compliance.
¶ 63. A definition of "satisfy" that is based on sufficiency instead of perfection is also supported by the statute's legislative history.
¶ 64. In 1983 the legislature amended the definition for "successful completion of a sentence" provided in Wis. Stat. § 973.015(lm)(b). The initial draft of the amendment stated that in order for a probationer to successfully complete a sentence, the probationer "must not violate any conditions of probation." Drafting file for 1983 Wis. Act 519, Legislative Reference Bureau, Madison, Wis. This language was replaced with the current language stating that to successfully complete a sentence, a probationer "must also satisfy the conditions of probation." It appears the legislature expressly considered requiring perfect compliance with the terms of probation and rejected it.
¶ 65. I turn now to apply the definition of "satisfy" based on sufficiency to the case at hand. Although the form from the Department of Corrections indicates that Ozuna violated the term of probation prohibiting any alcohol use (it noted a single citation for underage drinking), no significant violations were reported. Indeed, the Department of Corrections indicated that Ozuna's compliance with the terms of probation was sufficient by checking the box labeled "the offender has successfully completed his/her probation." Accordingly, I conclude that Ozuna successfully completed his sentence.
¶ 66. Wisconsin Stat. § 973.015 provides that when an offender has successfully completed his sen- *33 fence, and the probation authority has forwarded a certificate of discharge to the court, it shall have the effect of expunging the offender's record.[7] Here, because Ozuna successfully completed probation, ex-punction should have been granted automatically when the DOC's verification was received by the court. Hemp, 359 Wis. 2d 320, ¶ 29. Therefore, the court of appeals should be reversed.
III
¶ 67. In sum, the majority opinion makes no sense to me. It defies:
• the purpose of the statute;
• the statutory directive that where a certificate of discharge has issued it "shall have the effect of expunging the record. .. ." Wis. Stat. § 973.015(lm)(b);
• a reasonable interpretation of the word "satisfies" that is more consistent with the statute's purpose and legislative history;
• our clear and recent precedent; and
• reality (the majority's apparent demand for absolute perfection is unmoored from the reality of the lives of many youthful offenders).
*34 ¶ 68. It is unclear to me why the majority has bent over backwards to reach its confusing conclusion. What is clear, however, is just how devastating the majority opinion is to the health of our justice system and to the lives of many youthful offenders.
¶ 69. With the stroke of a pen, the majority has inexorably altered the trajectory of those lives. They will forever wear the scarlet letter of convicted criminal and, together with their families, face a future of collateral consequences for their youthful convictions.
¶ 70. For the reasons set forth above, I respectfully dissent.
¶ 71. I am authorized to state that Justice SHIRLEY S. ABRAHAMSON joins this dissent.

 This case arose because of an unclear form utilized by the Department of Corrections to notify the circuit court that the *22 defendant had completed his probation. The form had multiple boxes for the probation agent to choose from — boxes indicating whether the offender had or had not successfully completed his probation and boxes indicating whether certain terms of probation had been met.
Here, the probation agent checked the boxes labeled "The offender has successfully completed his/her probation" and "All court-ordered conditions have not been met." Based on those seemingly inconsistent markings, the circuit court determined that the defendant had not satisfied the terms of his probation and denied expunction. The old form has now been modified to include only two boxes: one indicating that the offender has successfully completed probation and one indicating that the offender was not successful.

 Other collateral consequences stemming from a criminal record include the denial of government issued licenses or permits, ineligibility for public services and public programs, and the elimination or impairment of civil rights. See http://www.uniformlaws. org/ActSummary. aspx?title=Collateral %20Consequences%20of%20Conviction%20Act ("the numbers and complexity of these consequences have mushroomed and the U.S. prison population has grown. . . There is a real *25 concern on a societal level that collateral consequences may impose such harsh burdens on convicted persons that they will be unable to reintegrate into society.").

 See http://doc.wi.gov/community-resources/Rules-of-Community-Supervision/standard-rules-of-supervision-english.

 Recently, 2017 A.B. 331 was introduced in the Wisconsin Legislature to amend Wis. Stat. § 973.015(lm). The proposed legislation would allow for the filing of a petition for expunction with the sentencing court after completion of the sentence. The Legislative Reference Bureau (LRB) analysis explains: "Current law specifies that the expungement order must be made only at sentencing and then the record is expunged when the person completes his or her sentence." The LRB's description of current law is in accord with the plain meaning interpretation set forth in this dissent and underscores that the majority is indeed sub silencio overruling Hemp.

 We previously declined the opportunity to revamp our supreme court rule on expunction. On June 30, 2009, the Board of Governors of the State Bar of Wisconsin filed a rules petition seeking changes to Supreme Court Rule (SCR) Ch. 72 (Retention and Maintenance of Court Record). The petition also asked this court to amend SCR 72.06 (Expunction). After public hearing and further discussion the court took no action on the petition, in part because it was aware that the Wisconsin State Legislature was then planning to establish a committee to study the issue of expunction. In ensuing years, a number of legislative proposals have been introduced to address the issue, but none has advanced to fruition. Ultimately, this court voted to dismiss the petition and await further legislative action. For a more detailed history of the petition, see S.Ct. Order 09-07 (issued July 19, 2016).

 This court has previously recognized statutory ambiguity created by use of the word "satisfy". Abitz v. Abitz, 155 Wis. 2d 161, 172 455 N.W.2d 609 (1990) (referring to "the ambiguous word 'satisfy' in sec. 766.55(2)(c), Stats.").

 In this case the Department of Corrections (DOC) issued a Verification Form, rather than a certificate of discharge. That is because the DOC does not issue certificates of discharge to misdemeanants. See Wis. Admin. Code DOC § 328.16(2). Nevertheless, the DOC is required to notify the court of a probationer's successful completion of sentence. Wis. Stat. § 973.09(5)(c). It does so through the Verification Form, which serves as the functional equivalent of a certificate of discharge for purposes of Wis. Stat. § 973.015.