IN RE the MARRIAGE OF: Marian Victoria SMITH, Petitioner-Respondent,

v.

Donald E. SMITH, Respondent-Appellant.

Court of Appeals

*No. 93–0013–FT. Submitted on briefs March 26, 1993.—Decided May 11, 1993.*

(Also reported in 501 N.W.2d 850.)

For the respondent-appellant the cause was submitted on the briefs of *Bruce J. Kostner* of *Kostner, Ward & Koslo* of Arcadia.

For the petitioner-respondent the cause was submitted on the brief of *James Duvall*, district attorney, of Alma.

Before Cane, P.J., LaRocque and Myse, JJ.

MYSE, J.  Donald Smith appeals an order denying his motion for a reduction in his child support obligation based on a reduction in his earnings that resulted from his change of employment.[1] He contends that the trial court's determination that his termination of employment was not the result of medical problems is clearly erroneous. He further contends that the trial court is precluded from basing a child support order on earning capacity rather than actual earnings unless it determines that he was shirking. Donald argues that because the court did not find that he was shirking it was required to base the child support order on his actual earnings. Because we conclude that the evidence sufficiently supports the trial court's determination that Donald's change of employment was voluntary and unreasonable and that the trial court is permitted to look at earning capacity when it determines that the party's termination of employment was unreasonable, we affirm the order.

Donald and Marian Smith were divorced in 1987. At the time of the divorce, Donald and Marian had two minor children, aged three and four years old. The judgment of divorce ordered Donald to pay $225 per month child support as long as he is employed, to be reduced to $150 per month "in the event [Donald] is again unemployed . . . ." In June 1988, Donald's child support obligation was increased to $405 per month

---

[1] This is an expedited appeal under Rule 809.17.

and he was ordered to pay $25 per month toward his child support arrearage.

At the time of these orders, Donald was employed by Winona Van Norman as a machinist and earned approximately $19,600 annually. Donald also worked on his thirty-three-acre farm and painted on holidays and vacation days.

In October 1990, Donald began experiencing problems with hemorrhoids and a fistula in his rectum. He had two surgical procedures to treat the problems, one in November 1990 and the other in March 1991. Because of these medical problems, Winona Van Norman assigned Donald to a less physically demanding job. Nonetheless, Donald quit his job on October 1, 1991, claiming his medical problems prevented him from working. He received his retirement pension from Winona Van Norman in a $11,280 lump sum payment and began operating his farm as his only means of income.

In November 1991, Donald petitioned the court for a reduction of his child support obligation based on his allegation of a substantial change of circumstances. Upon stipulation of all the parties, the court reduced Donald's child support obligation to $250 per month commencing December 1991. The court also ordered Donald to pay $2,750 from his lump-sum pension payment and created a lien on Donald's real estate to secure payment of child support arrears and current child support obligations. The continuation of the reduction of Donald's child support obligation from $405 per month to $250 per month was contingent upon Donald's filing a physician's report "setting forth in detail the nature and extent of his disability as it relates to his inability to obtain or hold employment, including an estimate of the length of time any disabil-

ity-caused inability to work will last." If he failed to file the report by February 1, 1992, his child support obligation would be reinstated to $405 per month. Donald filed a report detailing his diagnosis and medical treatment; however, the report did not indicate that Donald had a disability precluding his employment. Donald also failed to pay $2,750 to the court as ordered. Accordingly, the court reinstated Donald's child support obligation of $405 per month and denied his motion to reduce his child support obligation.

In August 1992, Donald petitioned the court to reduce his child support obligation and to review the family court commissioner's denial of a previous motion to reduce child support in June 1992. At the hearing, he testified that he is unable to work because of pain, his incontinence and his inability to sit or stand for long periods of time. He also testified that he continues to work on his farm planting, cultivating and harvesting his hay and soybean crops, and that he is able to sit on his tractor for two hours at a time. Finally, he testified that he has not completed any job applications since he voluntarily quit his job with Winona Van Norman in October 1991. Donald presented no expert testimony concerning his medical problems or the alleged disability they caused.

The trial court denied Donald's motion to reduce child support, based on the court's determination that Donald had not met his burden of proof because he had failed to prove his inability to work by competent expert testimony. The court implicitly found the decision to terminate employment resulting in income of $19,600 a year to operate his thirty-three-acre farm, which produced no net income, was unreasonable and determined Donald's child support obligation based upon his earning capacity rather than his actual earn-

ings. The court concluded that the ongoing lien on Donald's property and the ordered $2,750 payment from his lump-sum pension payment were reasonable and valid and continued these provisions of the previous order.

A trial court's decision to modify child support after divorce is discretionary and will not be overturned absent an erroneous exercise of discretion. *Abitz v. Abitz*, 155 Wis. 2d 161, 174, 455 N.W.2d 609, 614 (1990). Discretion is properly exercised where the decision reflects a rational reasoning process based on the application of the correct legal standards to the record facts. *Id.* at 174, 455 N.W.2d at 615. Donald first contends that the trial court erred by concluding that he voluntarily terminated his employment with Winona Van Norman, rejecting his claim that he quit as a result of his medical condition. Because his medical condition's effect upon his ability to work is a factual matter, we will not disturb the court's finding unless it is clearly erroneous, and we defer to the court's credibility determinations. Section 805.17(2), Stats.

We first note that Donald introduced no medical evidence supporting his claim that he was physically unable to continue with his employment as a result of his medical problems. The physician's report submitted to the trial court, while detailing the nature of Donald's condition and its treatments, fails to indicate the nature of the disability, if any, resulting from the condition. Nor does the report restrict Donald's physical activity or state that he has a temporary or permanent disability precluding his gainful employment at Winona Van Norman or elsewhere. The trial court is not required to accept Donald's assertion that

133

he is physically unable to work, especially in consideration of his assignment to light duty at Winona Van Norman and the physical demands of his farming activities. The trial court could reasonably conclude that Donald voluntarily quit his job at Winona Van Norman, rather than being forced to quit by his medical condition.

Because Donald seeks a reduction in child support based upon a change in circumstances allegedly caused by his medical condition, the burden of proof that his medical condition resulted in an involuntary reduction of his income sufficient to justify a reduction in his child support obligation rests upon Donald. *See Piaskoski v. Piaskoski*, 151 Wis. 2d 549, 552–53, 445 N.W.2d 327, 329 (Ct. App. 1989), *rev'd on other grounds, Schulz v. Ystad*, 155 Wis. 2d 574, 456 N.W.2d 312 (1990). This record sufficiently supports the trial court's conclusion that Donald failed to demonstrate that his termination of employment was involuntary and the result of medical necessity and we uphold that conclusion.

Donald next contends that the trial court is precluded from considering Donald's earning capacity unless it first makes a finding of "shirking," citing the following language in *Abitz*, 155 Wis. 2d at 166, 455 N.W.2d at 611: "[A]bsent an express finding of shirking or transfer with intent to defraud, the circuit court abuses its discretion when it orders child support [based upon earning capacity rather than actual earnings]." Donald defines shirking as the intentional reduction of income for the purpose of avoiding the party's financial responsibilities, citing the following language from our decision in *Wallen v. Wallen*, 139 Wis. 2d 217, 224, 407 N.W.2d 293, 295 (Ct. App. 1987):

> [T]o base a child support award on capacity to earn rather than actual earnings, there should be a finding *based on evidence* that the parent was failing to exercise his or her capacity to earn because of disregard of his or her support obligations. . . . A trial court's consideration of earning capacity rather than actual earnings is improper absent a finding that a parent was not "fairly or diligently working at the occupation which he [was] best suited for, [or] that he [was] willfully accepting employment and resultant lower compensation for the purpose of reducing his ability to pay . . . support money." (quoting *Edwards v. Edwards*, 97 Wis. 2d 111, 119, 293 N.W.2d 160, 165 (1980) (Emphasis in original. Citation omitted.))

Based upon these cases Donald contends that Wisconsin law precludes consideration of earning capacity unless the trial court first made a determination that a party was "shirking," which, he alleges, means a deliberate reduction of income for the purpose of reducing the payor's ability to pay his or her support obligation. We do not agree.

In *Edwards v. Edwards*, 97 Wis. 2d 111, 116, 293 N.W.2d 160, 165 (1980), our supreme court concluded that Edwards' child support obligation should be based upon his actual earnings rather than his earning capacity because Edwards was working in the occupation for which he was trained and best suited. In reaching this conclusion the court noted that, in addition to the fact that there was no evidence that Edwards intended to defeat his support obligation, there was no evidence that "Edwards, in his occupation as an independent barber, *was not diligently working at the occupation for which he was best suited*" or that he "*failed to exercise his capacity to earn in total disregard of his support obligations.*" *Id.* at 120, 293 N.W.2d

at 165 (emphasis added). Essentially, the court in *Edwards* concluded that it was reasonable for Edwards to continue in his vocation as a barber notwithstanding the fact that he could earn more if he obtained other employment. This holding is consistent with the court's earlier holding in *Balaam v. Balaam*, 52 Wis. 2d 20, 28, 187 N.W.2d 867, 872 (1971), that

> [a] divorced husband should be allowed a fair choice of a means of livelihood and to pursue what he honestly feels are his best opportunities even though he might for the present, at least, be working for a lesser financial return. *This rule is, of course, subject to reasonableness* commensurate with his obligations to his children . . . . (Emphasis added.)

Implicit in this language is the rule that an unreasonable intentional change of occupation that results in a reduced ability to pay permits the court to look to the payor's earning capacity rather than actual earnings, even if there is no intent to defeat a support obligation. This rule was explicitly stated in *Van Offeren v. Van Offeren*, 173 Wis. 2d 482, 495–97, 496 N.W.2d 660, 664–65 (Ct. App. 1992), where we held that even if the obligor's voluntary reduction in income is well intended, if the decision was unreasonable in light of the person's support or maintenance obligations, the court may base the child support obligation on the obligor's earning capacity rather than actual earnings.

While there is some confusion in the case law concerning when the court may properly consider a party's earning capacity, confusion frequently centers on the meaning of the term "shirking." *Wallen*, 139 Wis. 2d at 223–24, 407 N.W.2d at 295, defines shirking as reduc-

ing one's earnings with the intent of reducing the ability to pay support. However, we noted in *In re R.L.M.*, 143 Wis. 2d 849, 852–53, 422 N.W.2d 890, 892 (Ct. App. 1988), that "shirking" does not require a finding that the obligor reduced his or her earnings for the purpose of avoiding support obligations:

> [I]n cases where the father has chosen not to fully and diligently pursue his best employment opportunities, the court may find that he is shirking his support responsibilities and may base its support award on the father's earning capacity or potential earnings. . . . [A] determination that shirking has occurred is often accompanied by a finding that the father has made a *voluntary or self-inflicted change in his financial circumstances*.

> A determination that "shirking" has occurred usually implies that the noncustodial spouse is trying to avoid his or her support obligations. The trial court did not find such an intent here . . . . Nevertheless, T.J.W. has decided to work part-time rather than full-time and, consequently, has voluntarily reduced his income. (Emphasis added.)

■ The definition of shirking is not dispositive of when the court may consider earning capacity. Nor must the trial court use the word "shirking," however it may be defined, before it may consider a party's earning capacity.

> It makes no difference to his child whether the court elects to call T.J.W.'s failure to meet his child support obligations "shirking" or gives it some other name. . . . *[When a decision to reduce income effectively deprives the child of the support to which it is reasonably entitled,] the trial court need not base its*

*support award on the noncustodial spouse's current earnings; instead, the court is permitted to base its support order on the spouse's potential income.*

*R.L.M.*, 143 Wis. 2d at 853–54, 422 N.W.2d at 892 (emphasis added). We conclude that Wisconsin law demonstrates that the payor's earning capacity may be considered when the payor's termination of employment resulting in lower earnings is voluntary and unreasonable.

In *Van Offeren*, 173 Wis. 2d at 497, 496 N.W.2d at 665, we concluded that the obligor's voluntary decision to quit his job at Johnson Wax was unreasonable in light of his child support obligation. The obligor had a well-paying position at Johnson Wax that enabled him to meet his child support and maintenance obligations until he voluntarily quit without first securing a comparable source of income. Instead, he pursued a business venture that he knew would take five to six years to produce income comparable to what he earned at Johnson Wax. Similarly, in *Forester v. Forester*, 174 Wis. 2d 78, 90–91, 496 N.W.2d 771, 776 (Ct. App. 1993), the payee spouse voluntarily quit her well-paying job as a surgical technician to pursue a business venture that substantially reduced her earning capacity. We concluded that it was unreasonable for the payee spouse to voluntarily substantially reduce her earning capacity and simultaneously insist that her husband support her at the standard of living she enjoyed while she was employed as a surgical technician. In each case, the court based the amount of support on the earning capacity of the spouse who voluntarily and unreasonably reduced his or her earnings.

■

Here, the trial court implicitly found that Donald's voluntary termination and failure to obtain other

employment was unreasonable. Donald had been earning approximately $19,600 annually at Winona Van Norman, where he had been employed for seventeen years. He voluntarily left this relatively stable, long-term employment to operate his farm, which he testified is operating at a loss. He has made no effort to obtain other employment that would provide income comparable to his previous income at Winona Van Norman. Donald's voluntary change in employment has greatly reduced his ability to meet his child support obligation. That fact, coupled with the children's dependence on Donald for support, renders Donald's decision to voluntarily terminate his employment at Winona Van Norman and operate his farm unreasonable. We therefore affirm the order.

*By the Court.*—Order affirmed.