In re the Marriage of:

Toni L. (Dumler) Rottscheit, Petitioner-Respondent,

State of Wisconsin, Respondent,

v.

Terry L. Dumler, Respondent-Appellant-Petitioner.

Supreme Court

*No. 01–2213. Oral argument December 3, 2002.—Decided June 25, 2003.*

2003 WI 62

(Also reported in 664 N.W.2d 525.)

295

For the respondent-appellant-petitioner there were briefs by *Todd G. Smith* and *LaFollette Godfrey & Kahn,* Madison, and oral argument by *Todd G. Smith.*

For the respondent there was a brief and oral argument by *Frank R. Vazquez,* Clark County Corporation Counsel.

An amicus curiae brief was filed by *Scott A. Sussman,* Madison, and *Anne Arnesen* and *Carol W. Medaris,* Madison, on behalf of the Center on Fathers, Families, and Public Policy and the Wisconsin Council on Children and Families.

¶ 1. JON P. WILCOX, J. This is a review of an unpublished court of appeals summary decision, *Rottscheit v. Dumler,* No. 01–2213, order (Wis. Ct. App. April 2, 2002), which affirmed an order by the Clark County Circuit Court, Jon M. Counsell, Judge, denying Terry Dumler's (Dumler) motion for modification of his child support order. Dumler, the petitioner, was incar-

cerated in January 2000. In 2001, he requested modification of an order that required him to pay $543 per month for the support of his three children. The central issue before this court is whether the circuit court erroneously exercised its discretion in refusing to reduce Dumler's child support payments in light of Dumler's incarceration and resulting change in income. Although we find it appropriate for a court to consider incarceration when reviewing a request for modification, we find that the fact of incarceration by itself neither mandates nor prevents modification. Incarceration is one factor that should be considered, but the determination should be made on a case-by-case basis, looking at the totality of the relevant circumstances. We conclude that under the circumstances presented in this case, the circuit court properly exercised its discretion under Wis. Stat. § 767.32 (1999–2000)[1] in finding that the facts in this case did not constitute a substantial change in circumstances sufficient to warrant modification.

I

¶ 2. The following facts are undisputed. Dumler married Toni Dumler[2] (now Rottscheit) on April 19, 1989. They had three children: Jeffrey Lee, born October 22, 1987; Greggory Douglas, born October 4, 1988; and Trenten Michael, born November 30, 1990.

---

[1] All subsequent references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise indicated.

[2] Since her divorce from Terry Dumler, Toni L. Dumler has remarried and changed her name to Toni L. Rottscheit. While her name changed after many of the relevant orders in this case, we will refer to Toni Dumler as Rottscheit throughout this opinion for the purpose of clarity.

During their marriage, Rottscheit worked as a nurse's assistant and Dumler worked as a laborer.[3]

¶ 3. In 1990, Rottscheit filed for divorce. The parties entered a stipulated divorce, and Rottscheit received custody of their three minor children. The judgment of divorce was signed on July 7, 1992, and, consistent with state guidelines, provided that Dumler was required to pay 29 percent of his gross income for child support. In 1998, Dumler's child support order was reconciled to a fixed amount set at $543 dollars per month.[4]

¶ 4. In 1999, Dumler was convicted under Wis. Stat. § 346.63(1)(a) for his fifth or greater offense of operating a vehicle while intoxicated (OWI). He was also convicted of cocaine possession under Wis. Stat. § 961.41(3g)(c). Dumler was sentenced to two years in a correctional facility for the OWI charge. He also received a consecutive one-year sentence for the drug conviction. Dumler had been incarcerated on at least three previous occasions for OWI convictions.

¶ 5. In January 2000, Dumler entered the Racine Correctional Institution. He initially earned wages of approximately $60 per month from working at the institution. However, 25 percent of this amount had to be withheld to pay court fines. While incarcerated,

---

[3] According to Dumler's counsel at oral argument, Dumler is a roofer and construction worker by trade.

[4] The record indicates that the order reconciling the previous percentage order was issued by Judge Michael W. Brennan of the Clark County Circuit Court on September 9, 1998. We were unable to locate a copy of this order in the record for this case, but as indicated by the court of appeals, the "Monthly Statement of Account" attached to Dumler's motion, indicates that the amount was set at $543 per month.

Dumler made several nominal child support payments, most under $10 per month.

¶ 6. On May 21, 2001, Dumler petitioned the circuit court for a modification of the child support order. He claimed that as a result of his incarceration, he could not make the child support payments. At the time of the petition, Dumler acknowledged that he was over $12,500 in arrears. He requested that the child support order be suspended during his incarceration or, alternatively, modified to 29 percent of his institutional wages. He asserted that if the order was not modified, he would accumulate over $25,000 in back arrearages, not including interest.

¶ 7. The circuit court held a hearing on the motion on August 1, 2001. Dumler appeared by telephone without counsel. At the hearing, Dumler stated that he had a pay rate of 28 cents an hour for approximately 160 hours per month, and thus made just under $45 per month. He acknowledged that the child support order had been set at a level he could pay when not incarcerated. Dumler explained that he would owe in excess of $25,000 if he was not granted relief, and that because the child support agency had a lien on him, it was unlikely that he could get a loan.

¶ 8. In response to questioning from the court, Dumler testified about his criminal record. As noted, at the time of the hearing, Dumler was serving a three-year sentence, one year for cocaine possession and two years for his fifth or greater OWI offense. Dumler acknowledged that he had been involved in 11 criminal court cases since 1986, although there were not convictions in all cases. He further admitted that at least three prior OWI convictions had resulted in incarceration. Also, the hearing record indicates that the one-year sentence for cocaine possession resulted from a

revocation of probation. When asked if he was aware of the consequences of his criminal behavior, Dumler stated: "Yes, and I have always gotten out and paid my child support." The court noted that the needs of the children had not changed since or because Dumler was incarcerated. When asked if there was anything else he would like to put before the court in support of his claim, Dumler stated that he believed the court had before it all the relevant information, including the record of child support payments. Dumler admitted alcohol and drug dependency, and noted that the institution had a program to help him solve that.

¶ 9. The circuit court held that Dumler's child support order should not be modified. The court found that Dumler's financial condition was Dumler's fault and resulted from Dumler's voluntary actions. The court further explained:

> This is not a situation where you need to wilfully avoid [ ] child support duty. In other words, he may not have had this intent in mind when he was deciding that he was going to [do] something involving him going to prison, but the consequences of prison were known, and really under the circumstances presented here, and given the intentional decision to drink and drive, intentional decision to possess cocaine, the intentional decision to undergo an act which resulted in the revocation of that probation, involved a definite effect on his future income, but looking at the fact that he will be—he's in treatment now which should improve his future employment prospects, and in considering everything else presented here, along with the fact that the children's needs don't go down just because somebody's put in prison, upon release from prison and after becoming gainfully employed, he could pay on these arrearages, and so I think it is appropriate that the order not be modified.

¶ 10. Dumler appealed the circuit court's order and on April 2, 2002, the court of appeals issued a summary disposition order affirming the circuit court's ruling. This court then granted Dumler's petition for review on June 25, 2002.

II

¶ 11. The decision whether a child support judgment should be modified is left to the circuit court's discretion. *Abitz v. Abitz,* 155 Wis. 2d 161, 174, 455 N.W.2d 609 (1990). Under Wis. Stat. § 767.32(1)(a), revision to a child support judgment "may be made only upon a finding of a substantial change in circumstances." The burden of showing that there has been a change in circumstances sufficient to justify a modification falls to the party seeking modification. *Parker v. Parker,* 152 Wis. 2d 1, 4, 447 N.W.2d 64 (Ct. App. 1989). Unless the circuit court has erroneously exercised its discretion, the decision will not be overturned. *Abitz,* 155 Wis. 2d at 174; *see also Burger v. Burger,* 144 Wis. 2d 514, 523, 424 N.W.2d 691 (1988). As the court of appeals has stated: "All that is required for us to affirm a trial court's exercise of discretion is a demonstration that the court examined the evidence before it, applied the proper legal standards and reached a reasoned conclusion." *Voecks v. Voecks,* 171 Wis. 2d 184, 189, 491 N.W.2d 107 (Ct. App. 1992). Even if a circuit court fails to articulate the reasons for its decision, this court will independently review the record to determine whether there is any reasonable basis upon which we may uphold the circuit court's discretionary decision. *State v. Davidson,* 2000 WI 91, ¶ 53, 236 Wis. 2d 537, 613 N.W.2d 606.

## III

¶ 12. As noted, the issue before this court is whether the circuit court erroneously exercised its discretion by denying Dumler's motion for modification of his child support order under the circumstances presented. We point out that the question is not whether we agree with the circuit court's ruling, but rather, whether the circuit court acted within the realm of its discretion. We hold that it did.

¶ 13. Dumler argues that the court erred in rejecting his motion for modification because incarceration has reduced his income to approximately $45 per month and he has no other assets that may be used to pay child support. Dumler claims that the circuit court erroneously focused upon the "voluntariness" of Dumler's criminal actions and ignored the economic realities faced by incarcerated parents. The State agrees that courts may consider incarceration in determining a motion for modification, but asserts that incarceration should only be one factor in the court's exercise of discretion.

¶ 14. We find that no per se rule applies to incarceration. We generally agree with the approach taken by the court of appeals. We find that incarceration is a factor that gives a court competence to review a child support order and, further, that it is an appropriate factor for courts to consider as they decide whether they "*should* exercise [] discretion to modify child support." *Voecks,* 171 Wis. 2d at 188 (emphasis added). However, the fact of incarceration should not, in and of itself, be determinative. The totality of circumstances surrounding the incarceration deserves examination.

¶ 15. In divorce actions, circuit courts are required to provide for the support of children in the family. Section 767.25(1)(a) of the Wisconsin Statutes provides that whenever a court enters a judgment of divorce, the court shall "[o]rder either or both parents to pay an amount reasonable or necessary to fulfill a duty to support a child." The order may be expressed as a percentage, a fixed sum, or a combination thereof.[5] *Id.* Section 49.22(9) of the Wisconsin Statutes requires the Department of Workforce Development (DWD) to adopt standards for courts to use in determining child support orders. *See* Wis. Admin. Code § DWD 40 (Preface)(Jan. 2003). The purpose behind these standards is to ensure "that a child's standard of living should, to the degree possible, not be adversely affected because his or her parents are not living together." *Id.*

¶ 16. Under Wis. Stat. § 767.25(1j), courts are generally supposed to determine child support payments by applying the percentage guidelines set out by the DWD.[6] However, a party may request a court to modify the amount of child support due under the percentage guidelines. Wis. Stat. § 767.25(1m). A court is allowed to modify the amount under Wis. Stat. § 767.25(1m) if it finds "by the greater weight of the

---

[5] Effective September 1, 2001, this rule has changed. 2001 Wis. Act 16, § 3786f. Under Wis. Stat. § 767.25(1)(a) (2001–2002), "The support order must be expressed as a fixed sum unless the parties have stipulated to expressing the amount as a percentage of the payer's income and the requirements under § 767.10(2)(am) 1. to 3. are satisfied."

[6] Wisconsin Admin. Code § DWD 40.03 (Jan., 2003) provides that the child support order for three children using the percentage standard shall be 29 percent of the payer's adjusted base income, as defined by the guidelines.

credible evidence that use of the percentage standard is unfair to the child or to any of the parties." The statute then provides a variety of factors to consider, including: the financial resources of the child and the parents; maintenance; the needs of each party to support himself or herself; the child's educational needs; the best interests of the child; "[t]he earning capacity of each parent, based on each parent's education, training and work experience and the availability of work in or near the parent's community"; and any other factors which the court finds to be relevant. *Id.* Thus, the judge has broad discretion in setting appropriate child support. If the circuit court does decide to modify child support from the applicable guideline percentage, under Wis. Stat. § 767.25(1n), it must state the amount that would be due under the guidelines, the difference between that amount and the amount awarded, and the reasons supporting modification from the percentage.

¶ 17. Section 767.32 of the Wisconsin Statutes governs revision of child support orders. As we have noted, a court may only revise a child support order where there has been a "substantial change in circumstances." Wis. Stat. § 767.32(1)(a). Under Wis. Stat. § 767.32(1)(b), several circumstances give rise to a rebuttable presumption of substantial change, including: commencement of participation in one of two listed statutory public assistance programs; passage of 33 months since the last child support order or revision was entered, unless the amount is expressed as a percentage; "[f]ailure of the payer to furnish a timely disclosure under s. 767.27(2m)"; and a difference between the amount ordered and the amount the payer would have been required to pay under the percentage

standard, if the court did not use the standard to set child support. None of these circumstances are applicable in this case.

¶ 18. Other circumstances listed under Wis. Stat. § 767.32(1)(c) "*may* constitute a substantial change of circumstances sufficient to justify revision of the judgment or order." (Emphasis added.) Under this section, factors in a court's determination include changes related to the payer's income, the needs of the child, and the payer's earning capacity. Wis. Stat. § 767.32(1)(c). A court may also consider "[a]ny other factor [it] determines is relevant." *Id.* Also, when the court is called upon to reevaluate a previously set child support order, the factors outlined in Wis. Stat. § 767.25 may once again come into play.

¶ 19. Although this court has not previously had the opportunity to consider the effect of incarceration upon child support obligations, the court of appeals has handled this type of case on several occasions. In *Parker,* 152 Wis. 2d at 2–3, 6, the court of appeals upheld a circuit court's determination that a father's incarceration for felony theft was not a substantial change in circumstances warranting modification of his child support obligation. Parker had a child support obligation of $40 per week for his two children. *Id.* at 3. Years after his divorce, Parker was convicted of theft and received a stayed five-year sentence. *Id.* While he was on probation, he was found in contempt for failure to pay child support. *Id.* He was over $22,000 in arrears. *Id.* A year after his conviction for theft, Parker's probation was revoked and he was sent to prison. *Id.* Parker did not work at the prison, but he received a stipend of eight cents an hour for 40 hours a week. *Id.* He had no other assets. *Id.* The court of appeals, in affirming the denial of Parker's motion for modification, held that

"child support need not automatically terminate during incarceration." *Id.* at 6. The court of appeals noted that Parker "need not be excused of his child support obligation because of a willful act that resulted in his imprisonment." *Id.* at 5. Under *Parker,* several factors are relevant in determining whether the court should exercise its discretion to modify child support in the situation where a payer is incarcerated. As stated by the court of appeals, these factors are: "the intentional nature of the crime involved, the likelihood of future income, and other relevant evidence." *Id.* at 6.

¶ 20. In *Voecks,* 171 Wis. 2d at 186, the court of appeals upheld a circuit court determination in favor of modifying a child support order during incarceration. The court found that the circuit court had the authority to modify the order and properly exercised its discretion to do so. *Id.* William Voecks was convicted of being party to the crime of cocaine delivery and was sentenced to seven years in federal prison. *Id.* Prior to his incarceration, Voecks had a $55 per week child support obligation. *Id.* At the time of his motion for modification, Voecks had almost $10,000 in arrearage. *Id.* at 187. He would be incarcerated until after his daughter reached the age of 18. *Id.* Voecks earned $65 per month in prison. *Id.* The circuit court modified his child support order to $25 per month. *Id.*

¶ 21. In affirming the circuit court's decision, the court of appeals rejected the argument that the incarceration at issue was analogous to "shirking" cases. "Shirking" cases arise where a payer voluntarily fails to exercise his or her full capacity to earn in order to avoid the obligation to pay child support. *Id.* at 188; *see also Sellers v. Sellers,* 201 Wis. 2d 578, 587, 549 N.W.2d 481 (Ct. App. 1996) (noting more broadly that shirking may

also exist where a payer makes a voluntary and unreasonable decision about his or her employment). The court of appeals noted that while Voecks' incarceration was the result of intentional criminal activity, there was no evidence that he acted with the intent to reduce his child support. Noting its decision in *Parker,* the court held: "*Parker* does not preclude the modification of child support obligations resulting from imprisonment any more than it compels such a result." *Voecks,* 171 Wis. 2d at 189. The court found that incarceration is a change of circumstances that gives a circuit court competence to review the child support order and is a factor a court *may* consider as it determines whether it *should* exercise its discretion to modify a set child support order. *Id.* at 188.

¶ 22. These cases show the great amount of discretion given to the circuit court in setting and modifying child support. As shown by the court of appeals' decisions, in these situations, the circuit court is in the best position to examine the relevant circumstances and determine whether a modification is appropriate. *See Sellers,* 201 Wis. 2d at 594–95 ("[W]e ultimately must trust the sound judgment of the trial court because the outcome in divorce cases is intensively fact specific for each case.").

¶ 23. In the context of the determination of an initial child support order, the court of appeals has had an opportunity to review its approach to the situation of incarceration it enunciated in *Parker* and *Voecks. See Modrow v. Modrow,* 2001 WI App 200, 247 Wis. 2d 889, 634 N.W.2d 852. In *Modrow,* the court of appeals found that incarceration was an appropriate factor to consider in setting child support. *Id.,* ¶ 17. Since the payer was incarcerated, the court of appeals deemed it appropriate to use earning capacity to set child support. *Id.,*

¶¶ 18–21. The court of appeals held that the court should consider "whether the crime was of an intentional nature, its potential effect on the pay[e]r's future income, the assets of the pay[e]r, how the needs of the children will be met during the pay[e]r's incarceration and any other factors which the court deems relevant." *Id.*, ¶ 17. Like Mr. Dumler, the payer in *Modrow* was incarcerated for a fifth offense OWI. *See id.*, ¶ 21. There the court of appeals found:

> In light of [the payer's] OWI history, he is reasonably held to have anticipated that further OWI conduct would result in his incarceration and interfere with the ability to support his children. A parent remains obligated to make reasonable choices that will not deprive his or her children of the support to which they are entitled.

*Id.*

¶ 24. Not surprisingly, many other states have dealt with the issue of incarceration as it relates to child support obligations, and the outcomes have varied greatly. State courts are significantly divided over the effect of incarceration upon a person's child support obligations. Like Wisconsin, most states are reluctant to grant modification of child support obligations where the payer has purposely attempted to avoid paying child support or voluntarily and unreasonably decided to reduce his or her income. For example, the Supreme Court of Oregon has held that a motion for modification of child support can be denied when the payer is incarcerated, if it is also shown that the criminal action was " 'not taken in good faith but was for the primary purpose of avoiding the support obligation.' " *Willis v. Willis,* 840 P.2d 697, 699 (Or. 1992) (emphasis in original omitted). As we have noted, in Wisconsin, cases involving this type of behavior are known as "shirking"

cases. *See, e.g., Roellig v. Roellig,* 146 Wis. 2d 652, 431 N.W.2d 759 (Ct. App. 1988). In *Foster v. Foster,* 471 N.Y.S.2d 867 (N.Y. App. Div. 1984), the New York Supreme Court, Appellate Division, held that even where the parent had equity in the family home, he was entitled to have his support obligation suspended during incarceration.

¶ 25. Some courts have determined that, at least where there is no evidence of intentional avoidance of child support, an incarcerated parent is entitled to a reduction of his or her child support obligation. *See Bendixen v. Bendixen,* 962 P.2d 170 (Alaska 1998) (finding that incarceration is not the equivalent of voluntary unemployment); *Nab v. Nab,* 757 P.2d 1231 (Idaho Ct. App. 1988); *In re Marriage of Barker,* 600 N.W.2d 321 (Iowa 1999) (establishing a blanket rule that inability to meet an existing support obligation during incarceration entitles a prisoner to a reduction during incarceration); *Wills v. Jones,* 667 A.2d 331 (Md. 1995) (holding that unless there is evidence that the crime committed was for the purpose of becoming incarcerated or impoverished, a prisoner is entitled to modification of a support order); *Pierce v. Pierce,* 412 N.W.2d 291 (Mich. Ct. App. 1987) (holding that where an incarcerated person has no assets or income with which to pay child support or arrears, leaving a judgment in place benefits no one and constitutes additional punishment, and as such, a reduction is appropriate); *Johnson v. O'Neill,* 461 N.W.2d 507 (Minn. Ct. App. 1990); *Leasure v. Leasure,* 549 A.2d 225 (Pa. Super. Ct. 1988) (finding that incarceration is not analogous to a voluntary decrease in income and that where a prisoner lacks assets with which to pay child support, the support order may be suspended).

¶ 26. Numerous courts, however, have held that incarceration does not necessarily excuse a parent from his or her child support obligations. In *Noddin v. Noddin,* 455 A.2d 1051, 1053, (N.H. 1983), the Supreme Court of New Hampshire held that modification was inappropriate because the parent "engaged in criminal activity at his own peril, and his reduced financial ability was due to his own fault." That court reasoned: "Although unemployment or diminution of earnings is a common ground for modification, a petition for modification will be denied if the change in financial condition is due to fault or voluntary wastage or dissipation of one's talents and assets." *Id.* The Wisconsin Court of Appeals employed this statement of reasoning in *Parker,* 152 Wis. 2d at 5. In *In re Marriage of Burbridge,* 738 N.E.2d 979, 982 (Ill. Ct. App. 2000), the Illinois Court of Appeals found that incarceration did not necessarily require a court to reduce or suspend child support obligations. Rather, that court found that "all relevant factors" should be considered, including the payer's assets, the length of incarceration, the reason for incarceration, and the possibility of work release. *Id.* In *State v. Ayala,* 916 P.2d 504, 508 (Ariz. Ct. App. 1996), the Arizona Court of Appeals held that "incarceration alone does not justify suspending a support obligation." Arizona has guidelines which impute at least a minimum wage income to a parent who is unemployed or working below his or her full earning capacity. *Id.* at 506. Thus, before deviating from the guidelines, the court held that a court must, at a minimum, examine the assets and possible income of an incarcerated parent. *Id.* at 507. Finally, in *Thomasson v. Johnson,* 903 P.2d 254, 257 (N.M. Ct. App. 1995), a New Mexico appellate court held that where a father's criminal act was "deliberate" and "carried with it known

311

consequences which included incarceration," the obligation was only for a short period of time, and the father had marketable skills and assets, it was appropriate for the support payments to accrue during incarceration. *Id.* at 257.

¶ 27. As can be seen from some of the cases noted above, state courts have also differed about what constitutes "voluntary" unemployment or reduction in income. For instance, in *Furman v. Barnes,* 739 N.Y.S.2d 655, 656 (N.Y. App. Div. 2002), a New York court held: "Dismissal [of the petition for modification of a child support order] was entirely proper since petitioner's incarceration and loss of employment was occasioned solely by his wrongful conduct and resultant felony conviction." The Supreme Court of Montana agrees: " 'Father should not be able to escape his financial obligation to his children simply because his misdeeds have placed him behind bars. The meter should continue to run.' " *Mooney v. Brennan,* 848 P.2d 1020, 1023 (Mont. 1993) (internal citation omitted). In *Richardson v. Ballard,* 681 N.E.2d 507, 508 (Ohio Ct. App. 1996), the Ohio Court of Appeals reconsidered its previous precedents to hold that incarceration for criminal conduct is voluntary. Citing another Ohio Court of Appeals case, the Richardson court stated:

> A parent cannot, by intentional conduct or mere irresponsibility, seek relief from this duty of support. Defendant, who by his own wrongful conduct placed himself in a position that he is no longer available for gainful employment, is not entitled to relief from his obligation to support his child. Incarceration was a foreseeable result of his criminal conduct and is thus deemed a voluntary act in and of itself.

*Richardson,* 681 N.E.2d at 508 (internal quotations and citation omitted).[7]

¶ 28. Some courts have refused to reduce child support orders on the basis of the clean hands doctrine. For example, in *Koch v. Williams,* 456 N.W.2d 299, 301 (N.D. 1990), the Supreme Court of North Dakota held that incarceration was voluntary and that "no modification is warranted because the obligor, by voluntarily placing herself or himself in a less financially secure position, is without clean hands and precluded from seeking equity."

¶ 29. In contrast to the cases above, the Supreme Court of Alaska has held:

> Although incarceration is often a foreseeable consequence of criminal misconduct and all criminal acts are in some sense voluntary, non-custodial parents who engage in criminal misconduct seldom desire the enforced unemployment that accompanies incarceration; nor can they alter their situation; and, in stark contrast to parents who consciously choose to remain unemployed, jailed parents rarely have any actual job prospects or potential income.

[7] Other courts have held similarly. For example, in *Davis v. Vance,* 574 N.E.2d 330, 330 (Ind. Ct. App. 1991), an Indiana court noted that even incarcerated parents without income have been required to pay support at some minimal level. The court further held: "[The incarcerated parent] must take responsibility for the crimes he committed and all the repercussions which come with breaking the law. To eliminate the accumulation of his support obligation while he is incarcerated would serve to free him of some of those repercussions." *Id.; see also Proctor v. Proctor,* 773 P.2d 1389, 1391 (Utah Ct. App. 1989) ("[A]ppellant's inability to provide for his children from an income, instead of from his only asset, is a direct consequence of his own misconduct.")

*Bendixen,* 962 P.2d at 173. Similarly, the Washington Court of Appeals rejected an argument that incarceration could be equated with voluntary unemployment, noting that other jurisdictions agreed with its result. *Marriage of Blickenstaff,* 859 P.2d 646, 650 (Wash. Ct. App. 1993); *see also Leasure,* 549 A.2d at 227 ("Incarceration is usually an involuntary situation.").

IV

¶ 30. We agree with the court of appeals and the line of cases from other states that find parents with child support obligations should not automatically be rewarded with a payment reduction as a result of incarceration. While we acknowledge the financial effects of incarceration, the preceding discussion persuades us there are strong reasons why parents should not necessarily be excused from their child support obligations. This section addresses the reasons for this conclusion and the balance we believe is appropriate. Incarceration is an appropriate factor for courts to consider in reviewing a motion for modification, but the fact of incarceration alone is insufficient for a court to modify, or refuse to modify, a child support order. The court of appeals has laid appropriate groundwork for these types of cases. We now clarify the appropriate factors to consider relating to incarceration. We conclude that the circuit court here properly exercised its discretion and, as such, we affirm.

¶ 31. As the Wisconsin Statutes make clear, parents have a duty to support their children. *See, e.g.,* Wis. Stat. § 767.25 (requiring courts to set child support orders). The primary goals of child support statutes are to "promote the best interests of the child" and "avoid

financial hardship for children of divorced parents." *Ondrasek v. Tenneson,* 158 Wis. 2d 690, 695, 462 N.W.2d 915 (Ct. App. 1990). This court, too, has recognized the duty taken on by a parent: "The obligation to support one's children is a basic one." *Luciani v. Montemurro-Luciani,* 199 Wis. 2d 280, 309, 544 N.W.2d 561 (1996).

¶ 32. By having a child, a parent takes on a long-term responsibility—one that cannot be traded in or negated by bankruptcy. *See Mascola v. Lusskin,* 727 So.2d 328, 332 (Fla. Dist. Ct. App. 1999). Children's fundamental needs for survival exist whatever choices parents may make in life. Historically, there have been problems with enforcement of child support orders. *See Parker,* 152 Wis. 2d at 4 ("The failure of the current child support payment system is well documented."). As of 1999, slightly over half of custodial parents nation-wide that had child support awards received none or only part of the child support payments that were due them. *See* Timothy Grail, *Custodial Mothers and Fathers and Their Child Support,* Current Population Reports, United States Census Bureau, 5 (October 2002). Recent statistics show that over 26.1 percent of custodial parents live at poverty status. *Id.* at 3. These considerations show the importance of maintaining public policies that emphasize parental responsibility and promote payment of child support.

¶ 33. Dumler argues that enforcing his existing child support order and allowing arrears to accumulate essentially constitutes punishment. We disagree. In *Parker,* 152 Wis. 2d at 5, the court of appeals stated: "[T]he issue is not whether Parker can be punished for failing to pay support. The issue is whether he is entitled to eliminate the accumulation of

support obligation while he is incarcerated." The Florida Court of Appeals has stated: "[C]hild support is not a form of punishment at all but is instead a duty resulting from procreating children." *See Mascola,* 727 So.2d at 332. We agree. Leaving a child support obligation in place that was set before incarceration does not constitute additional punishment, but rather, leaves intact a responsibility taken on by the defendant in having children.

¶ 34. Child support is supposed to be among a parent's top priorities. A person who is incarcerated is not excused from his or her car payments, house payments, or credit card bills. While it is true that under Wis. Stat. § 767.32, child support arrears cannot be retroactively reduced, to allow for *automatic* reduction in child support obligations where a parent is incarcerated and has no outside assets would suggest that child support is near the bottom of the list of a parent's priorities. Such a policy would directly conflict with the legislature's intent in creating strict guidelines providing for child support and enforcement of child support laws. To find that incarceration automatically entitles a payer to a reduction in child support promotes the wrong incentives. It would allow a parent a "break" from child support, a reward for criminal behavior.

¶ 35. Further, child support is supposed to reflect what is in the best interests of the child. Dumler asserts that allowing arrearages to accumulate during incarceration should not be allowed because it is of no benefit to the child. We disagree with that argument in that arrearages represent money to which the child is entitled. While a parent is incarcerated, the child is forced to do without that money. A child should not necessarily

have to forego that monetary support forever simply because the parent was incarcerated. As one court has stated:

> [T]he only person to benefit if support is suspended would be [the incarcerated parent]. The purpose of the child support system is to protect the *child* and his best interest. Depriving a child of financial support solely because his or her parent committed a criminal act does not serve that interest.

*Richardson*, 681 N.E.2d at 508 (emphasis in original, internal citation omitted).

¶ 36. However, this court also recognizes the financial difficulties incarceration can create. We agree with Dumler that allowing arrearages to accumulate endlessly would discourage a parent from even attempting to pay down the debt. However, we do not agree that Dumler's case necessarily fits that paradigm. Admittedly, $25,000 is a great deal of money, but it is not such an exorbitant or insurmountable amount that a judge would have to find it beyond Dumler's ability to pay over time. Child support payments are to be held to a reasonable standard. Wisconsin Stat. § 767.32 specifically allows for revision when circumstances have substantially changed. Judges are allowed great discretion in setting child support and determining when a modification should be made. Upon release from prison, Dumler may well have grounds for again seeking a revision under Wis. Stat. § 767.32.[8] We agree with the

---

[8] We disagree with the dissent's argument that a circuit court's refusal to grant modification during incarceration and then grant modification after incarceration necessarily means "that the decision to modify is based on the underlying criminal behavior, not on the ability to pay or any other factors that

answer provided by the North Dakota Supreme Court: "To the argument that the debt will hinder his rehabilitation upon his release, our response is that the amount to be paid each month can be adjusted as his financial condition then requires." *Koch*, 456 N.W.2d at 302 (citing *Parker*, 152 Wis. 2d 1).

¶ 37. Dumler has also asserted that he will likely face the threat of enforcement by the child support agency and potential prosecution for unpaid child support once he is released because of the accumulated arrearages. He noted to the circuit court that he already had a lien. While we agree that unpaid child support may lead to enforcement action, we are not persuaded that such a result is inevitable. Again, Dumler may seek modification based on the circumstances following his release. Also, Dumler can and should cooperate with the child support agency in negotiating a payment plan to avoid further administrative enforcement and to begin paying down the arrearages.[9]

---

remain the same, such as the needs of the children." Dissent, ¶ 63 n.13. The dissent misconstrues the decision in this case. In ¶ 1, we have explicitly stated that incarceration is to be one factor for consideration, but that a judge is to make the determination whether or not to modify child support payments by looking at all of the relevant circumstances. Therefore, the decision to modify cannot be based solely on underlying criminal behavior. As we discuss, we find that the judge in this case adequately considered the appropriate circumstances and made a ruling that was within his discretion. Whether this court would rule the same way the circuit court did in this case is essentially irrelevant.

[9] Wisconsin Admin. Code § DWD 43.11(1) (Jan., 2003) provides:

> Applicability of alternative payment plans. When the department or a child support agency enforces a lien through seizure of real property or personal property, seizure of financial accounts, or

¶ 38. We agree with the court of appeals' finding in *Voecks* that situations involving incarceration are not necessarily analogous to "shirking" cases. Unless there is evidence that a person is incarcerated for reasons related to the avoidance of paying child support, we find that "shirking" cases are inapplicable. That said, however, we do find that there is some element of voluntariness involved with incarceration. We agree with sentiments expressed by the court of appeals in *Parker* and *Modrow*. In both these cases, the court of appeals found that incarceration was a result of intentional and unreasonable behavior. *See Parker*, 152 Wis. 2d at 5–6; *Modrow*, 247 Wis. 2d 889, ¶ 21. The same is true in most cases where criminal activity is involved. Aside from cases involving purposeful avoidance of child support, however, criminal behavior is not the same as shirking. In such cases, the unreasonable decision is to commit a crime, not to reduce income or avoid child support. Thus, while we agree with the court of appeals and various other jurisdictions that have found incarceration to be a foreseeable result of unreasonable behavior and, as such, "voluntary," we do not find that such a finding should be determinative of whether modification of child support is appropriate.

denial, nonrenewal, restriction, or suspension of licenses, the payer may negotiate an alternative payment plan with the child support agency.

Under Wis. Admin. Code § DWD 43.03(4) (Jan., 2003), it also appears that courts may participate in the creation of such a plan.

¶ 39. As discussed, circuit courts have a great deal of discretion in setting and modifying child support orders. This discretion serves the purpose of allowing a court to set an appropriate award based on a particular set of circumstances. What is right for one family may not be right for another. Based on the language of Wis. Stat. § 767.32, a court is encouraged to examine any factor it deems relevant. Although we find that incarceration is one factor a circuit court should consider, its weight in the balance should be left to the circuit court examining the particular circumstances.

¶ 40. Dumler asserts that unless the offense relates to avoidance of child support, the nature of the offense is irrelevant. We strongly disagree. We believe that a parent's behavior, or course of conduct over a period of time, may be very relevant to child support determinations. *Modrow* provides a good example, particularly in light of the circumstances raised here. In *Modrow,* as here, the court noted that the defendant was incarcerated for his fifth OWI offense. There, the court of appeals set child support based on earning capacity, finding that although alcoholism is a disease, the incarcerated parent made the choice to drive while intoxicated. *Modrow,* 247 Wis. 2d 889, ¶ 21. Given the parent's history of offenses, the court of appeals found that incarceration and interference with ability to pay child support were foreseeable results. *Id.* We agree. In the case before us, Dumler had been incarcerated for the same offense on previous occasions. Dumler had accumulated arrearages from those previous periods of incarceration. He was well aware of the impact incarceration had on his ability to pay, yet he continued to behave in the same manner. This pattern of offenses at

least shows disregard for the welfare of his children and a lack of responsibility. Additionally, Dumler's incarceration this time stemmed, in part, from possession of cocaine and revocation of his probation. Such facts are certainly relevant to the determination of child support.

¶ 41. On the other hand, incarceration does affect a person's present economic situation. The court of appeals and courts in other jurisdictions have devised factors for courts to consider in dealing with incarceration. We believe such factors are appropriate. For example, one court found:

> In exercising its discretion to determine the appropriate amount of child support applicable to an incarcerated parent who lacks assets, the trial court must consider a variety of factors, including (1) the length of incarceration experienced for the current conviction and the anticipated remaining period of incarceration, (2) the earning potential of the incarcerated parent following release, (3) the amount of the existing child support award, and (4) the total amount of child support that will accumulate upon the incarcerated parent's discharge.

*Oberg v. Oberg,* 869 S.W.2d 235, 238 (Mo. Ct. App. 1993). In *Parker,* 152 Wis. 2d at 6, the court of appeals found that a court "may consider the intentional nature of the crime involved, the likelihood of future income, and other relevant evidence." In *Modrow,* 247 Wis. 2d 889, ¶ 17, the court of appeals reiterated these factors and added to them, stating that a court should also consider incarceration's "potential effect on the pay[e]r's future income" and "how the needs of the children will be met during the pay[e]r's incarceration." We agree with these courts. In dealing with incarceration, we hold that a court should examine factors

including: the length of incarceration, the nature of the offense and the relevant course of conduct leading to incarceration, the payer's assets, the payer's employability and the likelihood of future income upon release, the possibility of work release during incarceration, the amount of arrearages that will accumulate during the incarceration, and the needs of the children.[10] Wisconsin Stat. § 767.32(1)(c) expressly states that a court may consider changes in earning capacity in determining the appropriateness of modification. As such, a court's determination that earning capacity has not changed is also a relevant consideration. This list, of course, is not exhaustive. Courts should evaluate all relevant circumstances.

■■■

¶ 42. In both setting and reevaluating child support orders, courts are called upon to examine the particular circumstances arising in the case to make determinations. As we have discussed, incarceration is an appropriate factor for a court to consider. We believe the approach taken by the court of appeals is correct. Incarceration is a change in circumstance sufficient to give a court competence to review a child support order. *See Voecks,* 171 Wis. 2d at 188. However, incarceration

---

[10] The dissent suggests that consideration of the nature of the offense and the "relevant course of conduct leading to incarceration" is tantamount to a shirking analysis. Dissent, ¶ 54. We disagree and point out again that we have distinguished the shirking cases by noting that the unreasonable decision involved in those cases relates to reducing income or avoiding child support as opposed to committing a crime. Given this difference, we have described consideration of the nature of the crime and the course of conduct as a relevant factor, but have stated that incarceration, in and of itself, should not be determinative one way or the other.

is only one factor to be considered by a court as it determines whether or not it *should* exercise its power to modify an award. *See id.* Wisconsin Stat. § 767.32 states that a court *may* modify an award. Consideration of the fact of incarceration is appropriate, but should not be the sole determinative factor. Also, consideration of the nature of the criminal conduct is appropriate, not for purposes of analogy to "shirking," but rather, for an overall evaluation of the parent's behavior as it relates to his ability and attitude toward paying child support.

¶ 43. In applying the relevant factors to this case, we find that the circuit court properly exercised its discretion. As we have already discussed, circuit courts may consider the circumstances surrounding incarceration, including the nature of the offense. The circuit court appropriately did so here. Dumler acknowledged to the circuit court that he had been previously incarcerated for OWI offenses. In fact, Dumler agreed with the circuit court that he had been involved in 11 criminal court cases since 1986.[11] We have discussed the reasonable implications of such a continued course of criminal conduct. The circuit court was within its discretion to consider this behavior as a factor.

¶ 44. In response to the court's questioning regarding whether he knew the consequences of his criminal actions, Dumler agreed that he did, and specifically added that, in the past, when he has been released from incarceration, he has "always gotten out and paid my child support." He admitted he was sometimes slow, but he nonetheless made the payments. Based on such testimony and the defendant's background, it is perfectly reasonable for a circuit court to

---

[11] We note, as the circuit court did, that Dumler was not necessarily convicted in all of these cases.

find, as the court did here, that Dumler will have no greater difficulty finding gainful employment upon his release from prison this time than he has on previous occasions. His occupation is not such that his incarceration will prohibit his reentry into the workforce. Whereas an attorney or doctor could lose their license to practice, Dumler is a roofer or construction worker by trade. There is little reason to believe he may not continue to practice his trade upon release. In fact, as found by the circuit court, Dumler was receiving treatment for his alcohol problems. If anything, such treatment and the elimination of his problems with alcohol and drugs should improve Dumler's employment prospects. At the very least, it is within reason for a circuit court to find that Dumler's job prospects upon release are not significantly different than they have been in the past. If, in fact, Dumler is unable to find work following his release, Dumler may again request a modification.

¶ 45. Dumler informed the court that if he were not granted relief, his arrearages would accumulate to over $25,000 by the time of his release. We agree that this is a significant amount of money. The record also indicates that Dumler has no assets that could be used to pay child support while he is incarcerated. There was no evidence in the record regarding Dumler's eligibility for work release, but, as the circuit court was aware, Dumler made approximately $45 per month from his work at the prison. According to the record, Dumler's child support obligations, other than existing arrearages and interest, will be diminishing and then ending within the next seven years.

¶ 46. The circuit court specifically discussed Dumler's sentence with him during the modification hearing. Dumler's period of incarceration is relatively

short. At the time he petitioned for modification of the child support order, the time remaining upon his sentence for the OWI and cocaine charges was well under two years. He indicated in an affidavit to the court that his mandatory release date was February 2003.[12]

¶ 47. The circuit court found that there was no indication that the needs of Dumler's children had changed during his incarceration. The child support agency pointed out to the court that it appeared Rottscheit would have to pick up the additional economic burden of supporting the children caused by Dumler's incarceration.

¶ 48. Finally, we note that in setting the child support order in place at the time Dumler requested modification, the circuit court followed the general rule of applying the percentage guidelines. As such, to modify an award the court would again be called upon to consider the fairness of modification to the parent and the children. Under these circumstances, a circuit court may appropriately find that fairness weighs in favor of the child.

¶ 49. For the foregoing reasons, we find, as did the court of appeals, that the circuit court properly exercised its discretion in denying Dumler's motion for

---

[12] Although the facts of this case present a defendant with a relatively short period of incarceration, we note that a longer period of incarceration may well tip the balance in favor of modification and make the refusal to modify payments an erroneous exercise of discretion on the part of the circuit court. Courts should carefully consider such circumstances in reviewing requests for modification from incarcerated parents. However, those facts are not before us. Dumler did not face a period of incarceration of ten, or even five, years. Dumler's short period of incarceration was properly factored in to the circuit court's analysis.

modification of his child support order. We do not pretend that this is a clear-cut case. We recognize that there are factors weighing both ways in this case. Nonetheless, given our "erroneous exercise of discretion" standard of review, we find that the circuit court adequately considered the appropriate factors and was within its discretion to deny the motion for modification.

*By the Court.*—The decision of the court of appeals is affirmed.

¶ 50. SHIRLEY S. ABRAHAMSON, CHIEF JUSTICE *(dissenting).* I agree with the majority opinion's conclusion that a parent's incarceration is a factor for circuit courts to consider in deciding whether there has been "a substantial change of circumstances sufficient to justify revision of the judgment or order."[1] I also agree with the majority opinion that an incarcerated parent is not automatically entitled to a reduction in child support. Rather, as the majority opinion properly explains, a circuit court must consider the totality of the circumstances in any given case.

¶ 51. I disagree with the majority opinion, however, when it concludes that a circuit court may refuse to modify an incarcerated parent's child support order based on the nature of the underlying offense and the parent's moral culpability in committing the offense that led to incarceration.

¶ 52. A parent's moral culpability in the events that lead to a change in circumstances is relevant when considering a request to modify child support to the extent that it demonstrates an intent to reduce available income or assets to avoid paying child support.

---

[1] Wis. Stat. § 767.32(1)(c) (1999–2000).

These cases are known as "shirking" cases, because a parent is found to have engaged in a course of conduct designed to "shirk" his or her responsibility to provide child support.[2]

¶ 53. The majority opinion is correct when it rejects the argument that incarceration is analogous to shirking.[3] Aside from parents who are incarcerated for failing to pay child support, parents do not commit criminal acts leading to incarceration in order to avoid having to pay child support. Prison is a devastating and dangerous place, and the consequences of a criminal conviction and a term of incarceration extend well

---

[2] *See, e.g., Smith v. Smith,* 177 Wis. 2d 128, 136–37, 501 N.W.2d 850 (Ct. App. 1993); *Van Offeren v. Van Offeren,* 173 Wis. 2d 482, 492, 496 N.W.2d 660 (Ct. App. 1992); *In re Paternity of R.L.M.,* 143 Wis. 2d 849, 852, 422 N.W.2d 890 (Ct. App. 1988).

[3] Majority op., ¶ 42. *See, e.g., Voecks v. Voecks,* 171 Wis. 2d 184, 187–88, 491 N.W.2d 107 (Ct. App. 1992) ("We conclude that the 'shirking' cases are inapplicable. . . . While we do not wish to reward criminal conduct, we cannot conclude, as a matter of law, that criminal conduct must be treated as deliberate conduct designed to reduce income to avoid paying child support. Therefore, we conclude that even though incarceration results from intentional criminal conduct, it is a change in circumstances that gives a trial court competence to review a child support order. We also conclude that incarceration is a factor that the court may consider when determining whether it should exercise its discretion to modify child support."); *Wills v. Jones,* 667 A.2d 331, 339 (Md. App. 1995) ("The contention that [the father's] incarceration and subsequent impoverishment should be considered 'voluntary' because he made the free and conscious choice to commit a crime stretches the meaning of the word beyond its acceptable boundaries."); *Johnson v. O'Neill,* 461 N.W.2d 507, 508 (Minn. App. 1990) ("Intention to commit a crime does not automatically translate into intention to limit income.").

beyond a temporary loss of income.[4] There is certainly no evidence in the present case that the father drove drunk while possessing cocaine so that his probation would be revoked, he would be incarcerated, his income would be reduced, and his child support obligations modified.

¶ 54. Nevertheless, the majority opinion condones the circuit court's conclusion that the father intentionally committed his crime, knowing that prison and a reduction in income would be the consequence, and its consequent refusal to modify his child support order. While expressly rejecting the idea that incarceration is analogous to shirking, the majority opinion adopts a shirking analysis in order to uphold the circuit court's decision in the present case when it writes that circuit courts may consider "the intentional nature of the crime" and the "nature of the offense and the relevant course of conduct leading to incarceration."[5]

¶ 55. The vast majority of crimes, by definition, require that the offender act voluntarily and with the intent to commit the crime. Moreover, it is always foreseeable that criminal activity will have consequences, including incarceration and loss of income. Permitting these factors to be considered in all cases will necessarily tip the balance against modifying child support for incarcerated parents.

¶ 56. Once a court determines that a parent is not incarcerated because of his or her failure to pay child

---

[4] *See generally* Nora V. Demleitner, *Preventing Internal Exile: The Need for Restrictions on Collateral Sentencing Consequences,* 11 Stan. L. & Pol'y Rev. 153 (2000); *see also* Kathleen M. Olivares et al., *The Collateral Consequences of a Felony Conviction: A National Study of State Legal Codes 10 Years Later,* Fed. Probation, Sept. 1996, at 10.

[5] Majority op., ¶ 41.

support, the courts should direct its attention to the standard measures of a parent's ability to support his or her children and how those measures are affected by incarceration. Wisconsin Stat. § 767.31(1)(c)3. directs that a change in a payer's earning capacity may constitute a substantial change in circumstances sufficient to justify revision of a support order. Clearly incarceration affects earning capacity. As the defendant's brief aptly states, "[I]t is difficult to imagine anything having a more profound effect on a parent's ability to provide financial support to his or her children than a period of incarceration."[6]

¶ 57. Section 767.32(1)(c)4. also includes an opportunity for the court to consider "any other factor that the court determines is relevant."[7] In the context of an incarcerated parent, "any other factor" should include, but is not limited to, such matters as how much the parent can pay from prison earnings, whether the parent has assets or other available means to continue paying child support while incarcerated, how long the parent will be incarcerated, the parent's past earnings, the future earning capacity and assets of the incarcerated parent, the impact of incarceration on the parent's employability and future earning capacity, the total amount of arrearages that will accumulate by the time of discharge, and the amount of the existing child support award.

¶ 58. That a parent cannot pay the full support order while in prison and will accumulate arrearages is not determinative of modifying the support order. In some cases, the parent might reasonably be able to pay the arrearages after release. In other cases, maintain-

---

[6] Defendant's Brief and Appendix at 25.

[7] Wis. Stat. § 767.31(1)(c)4. (1999–2000).

ing a pre-incarceration support order and forcing a parent to accumulate substantial arrearages beyond what seems to be any ability to pay is unreasonable. It certainly does not help a child, since the child faces hardship due to the loss of the support money when the parent is incarcerated, regardless of whether the circuit court modifies the support order. Moreover, it imposes a burden on a parent that the parent cannot bear.

¶ 59. The factors set forth herein reflect a fair and equitable approach to the real circumstances facing an incarcerated parent and are the factors that a court should consider in cases where a parent seeks to modify a child support order due to incarceration. Cases in other jurisdictions support this approach.[8]

¶ 60. Using this approach, I conclude that the circuit court erroneously exercised its discretion in the present case when it failed to give reasoned consideration to the individual facts presented in this case.[9] The circuit court focused almost exclusively on the prisoner's criminal conduct. It did not consider any of the other relevant factors. See the circuit court reasoning quoted at majority opinion, ¶ 9.

---

[8] *See, e.g., In re Marriage of Hamilton,* 857 P.2d 542, 544 (Colo. Ct. App. 1993); *Wills v. Jones,* 667 A.2d 331, 334–36 (Md. Ct. App. 1995); *Oberg v. Oberg,* 869 S.W.2d 235, 238 (Mo. Ct. App. 1993); *Thomasson v. Johnson,* 903 P.2d 254, 256–58 (N.M. Ct. App. 1995); *Willis v. Willis,* 840 P.2d 697, 699 (Or. 1992); *see also* Lewis Becker, *Spousal and Child Support and the "Voluntary Reduction of Income" Doctrine,* 29 Conn. L. Rev. 647, 713–19 (1997) (proposing a factor-oriented test in deciding whether to grant an incarcerated parent's request for modification of a child support order).

[9] *Hartung v. Hartung,* 102 Wis. 2d 58, 66, 306 N.W.2d 16 (1981).

¶ 61. Prior to his incarceration, the father reported an annual income over $22,000, almost $2,000 per month. He earns about $45 per month while incarcerated. He has no assets or non-prison income from which to meet his child support obligations. His child support order was set at $543 per month based upon his pre-incarceration income. Maintaining the current child support order will increase his arrearages to $25,000 by the end of his three-year sentence. While he does not have a professional license that will be revoked because of his conviction, the consequences of his conviction for future employment and income, as is true for substantially all offenders, are significant. There is little likelihood in the present case that the father can pay off this large amount of arrearages within a reasonable time after his release even assuming that he earns what he did before imprisonment. In short, there has been a substantial change of circumstances sufficient to justify revision of the child support order in the present case.

¶ 62. There are also strong public policy reasons for modifying the order in this case. Child support amounts are set, as the majority opinion points out, to ensure that a child's standard of living should, to the degree possible, not be adversely affected because his or her parents are not living together.[10] While modifying the father's child support order here will undermine this goal in the short term, failing to modify the order will undermine this goal in both the short term and the long term, and will certainly not benefit his children.

---

[10] Majority op., ¶ 15 (quoting Wis. Admin. Code § DWD 40.01).

¶ 63. Regardless of the child support order, the father here earns only $45 per month. Maintaining the support order at $543 per month while he is incarcerated does not change the fact that his children will not receive any more than $45 per month. Moreover, maintaining the support order will result in his release from prison with an insurmountable amount of arrearages that would likely discourage him from making payments or engaging in honest work with paychecks from which a court could order garnishment of his wages.[11] It is absurd to suggest, as the majority opinion does, that a parent's redress in the face of arrearages is to request a modification at the time of release.[12] What circumstance would be different post-incarceration than existed during incarceration that would alter a circuit

---

[11] As the father explained to the circuit court in the present case:

> There is no way I can pay that [$25,000] off. ... [T]o have this kind of debt to come out, that's just saying that I'm probably going to relapse, or just go to work and find a small job, and that's just pushing me away. You've got no incentive to do anything.

[12] Majority op., ¶ 36. In some states a trial court can hold a petition for modification in abeyance until the prisoner is released. The trial court can then determine whether the support order should be modified. During the time the petition is held open, support installments do not accrue as an obligation that cannot be altered. *See, e.g., Halliwell v. Halliwell,* 741 A.2d 638, 642 (N.J. Super. Ct. App. Div. 1999) (plurality opinion).

court's decision?[13] Both during and after release it was the parent's criminal behavior that led to the reduction of income.

¶ 64. In contrast, ordering payments in amounts that can be made while the father is incarcerated will allow him to establish a habit of making payments. Moreover, it allows him to be released from prison without additional insurmountable arrearages hanging over his head, making it more likely that he will continue to make payments, reducing the arrearages and supporting his children.

¶ 65. Recent studies, as the majority opinion notes, demonstrate the importance of maintaining public policies that emphasize parental responsibility and promote payment of child support.[14] Reasonable support orders, that is, orders within the ability of the parent to pay, foster these public policies. Unreasonably high or low support orders do not. I agree with the arguments in the amicus brief of the Center on Fathers, Families and Public Policy and the Wisconsin Council on Children and Families, concluding that child support

---

[13] The majority is apparently saying that a circuit court may determine that a parent is eligible for modification of a support order once the parent is released from prison if he has no job or his earnings are reduced, even though the circuit court would not modify the support order while the parent was in prison without a job and no opportunity for greater earnings. To not grant modification to a parent while in prison but to grant modification to the same parent at release makes apparent that the circuit court's decision to modify is based on the underlying criminal behavior, not on the ability to pay or any other factors that remain the same, such as the needs of the children.

[14] Majority op., ¶ 32.

orders that are beyond a noncustodial parent's ability to pay are not in the best interests of the child.[15]

¶ 66. For the foregoing reasons, I would reverse the decision of the court of appeals and remand the cause to the circuit court to apply the proper standards to determine whether the support order should be reduced.

¶ 67. I am authorized to state that Justice ANN WALSH BRADLEY joins this dissent.

---

[15] Amicus Brief of Center on Fathers, Families and Public Policy and the Wisconsin Council on Children and Families, *passim.*